Guy McCLARY, Respondent-Appellant v. MASSEY FERGUSON, INC., Appellant-Respondent.

(354 S. E. (2d) 405)

Court of Appeals

*Wm. Reynolds Williams*, of *Willcox, Hardee, McLeod, Buyck & Baker*, Florence, *for appellant-respondent.*

*W. E. Jenkinson, III*, of *Jenkinson & Jenkinson*, Kingstree, *for respondent-appellant.*

Heard Dec. 10, 1986.

Decided March 16, 1987.

BELL, Judge:

Guy McClary commenced this action against Massey Ferguson, Inc. and Kingstree Tractor Co. for negligence, breach of warranty, and breach of contract. The jury returned a verdict against Massey Ferguson for $113,000. The circuit judge reduced the award to $91,642.02 because he found McClary failed to mitigate his damages. Massey Ferguson appeals the finding of liability and the amount of damages. McClary appeals the judge's reduction of damages. We af-

firm the jury's verdict, but reverse the judge's reduction.

In November 1981, Kingstree Tractor sold Guy McClary a new combine manufactured by Massey Ferguson. The combine was delivered to McClary about November 16. On the following day, the combine "threw a rod." McClary immediately called Kingstree tractor, who picked up the combine and brought it to their shop. Kingstree's employees repaired the combine under the supervision of Reuben Frank, a Massey Ferguson mechanic. McClary testified he then informed Lloyd Keene, Massey Ferguson's district sales representative, that he would not accept the combine unless he received a warranty covering three soybean seasons.[1] According to McClary, Keene agreed to those terms. McClary testified that since the 1981 season was almost over, he understood the warranty would cover the 1982, 1983, and 1984 seasons. Keene testified he extended the warranty only until August 1, 1983. A letter Keene wrote to Massey Ferguson confirmed his version of the oral extension. A copy of that letter was supposed to have been sent to McClary, but he denied ever receiving one.

On November 25, McClary signed the sales contract and a retail installment agreement. McClary testified he did not receive any written warranty. Massey Ferguson presented testimony McClary must have received the standard written warranty which was ordinarily delivered by the dealer at the time of sale. The Massey Ferguson standard warranty expressly disclaimed "ALL WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PURPOSE OR OTHER REPRESENTATIONS, WARRANTIES OR CONDITIONS, EXPRESS OR IMPLIED." The warranty further provided "IN NO EVENT SHALL THE OWNER BE ENTITLED TO RECOVER FOR INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES SUCH AS BUT NOT LIMITED TO LOSS OF CROPS, LOSS OF PROFITS OR REVENUE, OTHER COMMERCIAL LOSSES, INCONVENIENCE OR COST OF RENTAL OR REPLACEMENT EQUIPMENT."

After the combine was repaired, McClary operated it without major problems until December 1983, when it ap-

---

[1] According to McClary's testimony, a soybean season begins in late October and ends in late December or early January.

parently threw another rod. At that time, McClary still had ninety acres of soybeans left to harvest at Buckfield Plantation, a tract of land he farmed in Williamsburg County. Because the combine was inoperable, McClary arranged for Simon Jenks, another farmer, to harvest the remaining crops. Unfortunately, persistent rain delayed Jenks's harvesting of his own fields so that he was unable to harvest McClary's crops in time to salvage them. After the combine broke down, McClary called the owners of Kingstree Tractor, who informed him they were no longer in the farm machinery business and could not help him. Some time later, McClary telephoned Reuben Edwards, Massey Ferguson's mechanic, and was told he could do nothing because McClary had already contacted an attorney. McClary had the combine transported to the Kingstree junkyard where it remained at the time of trial.

In September 1984, Massey Ferguson filed an action against McClary to recover the money due under the retail installment contract. A short time later McClary instituted an action against Kingstree Tractor and Massey Ferguson for breach of warranty, breach of contract, and negligence. The circuit judge granted Massey Ferguson's motion for summary judgment on the negligence claim. The two actions were then consolidated and tried before a jury. The circuit judge directed a verdict against McClary for the $45,736 owed under the installment contract. The jury awarded McClary $113,000 against Massey Ferguson, but found Kingstree Tractor not liable. The trial judge found McClary had failed to mitigate consequential damages incurred after 1983 and reduced his award to $91,642.02.

## I.

Massey Ferguson contends the jury's verdicts are "irreconcilably inconsistent." They argue the jury could have found liability only for breach of either the express written warranty or an implied warranty of merchantability. Since the written warranty expressly limited liability to repair and replacement, Massey Ferguson contends the jury could not have based its verdict, which included consequential damages, on the written warranty. Thus, the jury must have concluded Massey Ferguson breached an implied warranty.

Massey Ferguson further argues, however, that since a warranty, as a matter of law, is implied by both the manufacturer and the seller, the jury should have imposed liability for the breach not only on Massey Ferguson, but also on Kingstree Tractor. Thus, Massey Ferguson contends, the verdicts are inconsistent, and the trail judge erred in sustaining them.

Massey Ferguson's argument relies on a false premise. The written and implied warranties were not the only possible bases for the jury's verdict. The jury could also have found Massey Ferguson breached an express oral warranty given to McClary by Lloyd Keene. If the jury believed McClary's testimony that he never received the written warranty, then they could have found Keene's agreement with McClary constituted an express oral warranty, which ran directly from the manufacturer to the buyer and was limited only in duration. Under that theory, the jury was free to award McClary any damages proximately caused by the breach, including consequential damages. *See* Section 36-2-714, Code of Laws of South Carolina, 1976. Since the verdicts were supported under a theory of breach of an express oral warranty, the trial judge committed no error in sustaining them. When a jury returns a general verdict in a case involving two or more issues, and its verdict is supported as to at least one issue, the verdict will not be reversed. *Gold Kist, Inc. v. Citizens & Southern National Bank of South Carolina*, 286 S. C. 272, 333 S. E. (2d) 67 (Ct. App. 1985).

## II.

Both parties appeal the amount of the damages. Massey Ferguson contends the trial judge erred in permitting McClary to recover for the loss of the Buckfield Plantation crops because he failed to mitigate his damages. Massey Ferguson alleges McClary should have had the combine repaired, at a cost of $4,000, rather than simply abandoning it. A party injured by the acts of another is required to do those things a person of ordinary prudence would do under the circumstances, but the law does not require him to exert himself unreasonably or incur substantial expense to avoid damages. *Tri-Continental Leasing*

*Corp. v. Stevens, Stevens & Thomas, P.A.*, 287 S. C. 338, 338 S. E. (2d) 343 (Ct. App. 1985). The reasonableness of actions to mitigate damages is ordinarily a question for the jury. *See Bannon v. Knauss*, 282 S. C. 589, 320 S. E. (2d) 470 (Ct. App. 1984). This was the second time the combine had broken down. McClary believed the machine was still under warranty and Massey Ferguson was under a duty to repair it. He had no idea how much repairs would cost. He contacted both the dealer and the manufacturer's representative to no avail. He testified he could not rent another combine. He arranged for Simon Jenks to harvest the Buckfield crops. We cannot say under the circumstances it was unreasonable as a matter of law not to spend $4,000 to repair the combine.

Massey Ferguson also argues that rain, rather than the combine's failure, prevented McClary's soybeans from being harvested. The record shows, however, Simon Jenks was able to finish harvesting his own crops; the rain prevented him only from harvesting McClary's fields. If McClary had had an operable combine, he would presumably have been able to harvest his remaining soybeans despite the rain.

Finally, McClary argues the trial judge erred in reducing the verdict for failure to mitigate damages. Since McClary was seeking damages of $130,000, it is inferable that the jury considered mitigation and declined to award the $17,000 sought for losses occuring after 1984. The losses McClary suffered in 1984 were incurred in hiring workers to harvest crops he had obligated himelf to harvest in 1983. Massey Ferguson again argues, and the judge apparently agreed, that McClary should have mitigated these losses by repairing the combine. As we have already observed, whether McClary was under a duty to spend $4,000 to have the machine repaired was properly a question for the jury. We hold, therefore, the trial judge erred in reducing the damages awarded by the jury.

Affirmed in part, reversed in part and remanded.

CURETON and GOOLSBY, JJ., concur.