THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Hilton Head Resort Four Seasons Centre Horizontal Property Regime Council 
 Of Co-Owners, Inc.,        Respondent,
 
 
 

v.

 
 
 
Martin Bergman and Hilton Head Realty Group, Defendants, Of Whom Martin 
 Bergman is,        Appellant.
 
 
 

Appeal From Beaufort County
Daniel E. Martin, Sr., Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-271
Heard March 10, 2004  Filed April 20, 
 2004

AFFIRMED

 
 
 
Michael S. Seekings, of Charleston, for Appellant.
Russell S. Stemke, of Isle of Palms, for Respondent.
 
 
 

PER CURIAM:  The Hilton Head Resort Four 
 Seasons Centre Horizontal Property Regime Council Of Co-Owners (the Regime) 
 filed a complaint against both Hilton Head Realty Group and one of the groups 
 partners, Martin Bergman.  A subsequent jury trial resulted in a verdict in 
 favor of the Regime in the amount of $1,498,334.36 in actual damages and $375,000 
 in punitive damages.  Bergman appeals.  We affirm.
 FACTS
 In late 1989, Martin Bergman and Robert 
 OSickey formed Hilton Head Realty Group to purchase a block of condominium 
 units on Hilton Head Island.  In October 1989, Bergman and OSickey entered 
 into a contract to purchase 140 condo units, operated by the Regime, from 
 Mellon Bank.  Bergman and OSickey each contributed $50,000, which 
 was to be held in escrow by Mellon Bank.  After their original plan for financing 
 fell through, Bergman and OSickey approached New York attorneys Mark Birnbaum 
 and Kenneth Wurman about joining their venture and providing additional capital.  
 
 Bergman, OSickey, and Hilton Head Realty as 
 one party and Birnbaum and Wurman as the other party entered into a Joint 
 Venture Agreement on February 13, 1990.  The joint venture was formed to purchase 
 twenty condo units every thirty days until all the units were closed.  The 
 name of the joint venture was to be RICO, Inc.  On February 21, 1990, RICO, 
 Inc. was incorporated as a South Carolina Corporation.    
 Birnbaum and Wurman arranged for Strom Trust, 
 a client of theirs for which Birnbaum served as trustee, to provide financing 
 for the first purchase of condominiums.  In a document dated February 21, 
 1990, Strom Trust and Hilton Head Realty agreed Strom Trust would advance 
 $400,000 for the purchase of the first twenty units provided for in the agreement 
 with Mellon Bank.  
 The condominiums did not sell as quickly as expected.  
 Bergman found a buyer for the second set of units who took title to the units 
 immediately after the transfer from Mellon Bank to RICO in March 1990.  Bergman 
 testified that after that transaction, he told the other members of RICO that 
 he did not want any further involvement with the venture.  To that end, Bergman 
 did not make any contribution to the purchase of the third group of twenty 
 units.  However, he continued writing checks from the RICO account, including 
 making payments on the loans he and OSickey obtained to fund the escrow with 
 Mellon Bank.  On July 27, 1990, RICO secured a $200,000 loan from Stark Leasing, 
 another client of Birnbaum and Wurmer, for the purchase of the third set of 
 condominiums.  
 In October 1990, the Regime filed a lien for 
 unpaid assessments on the thirty-five units owned by RICO.  On February 22, 
 1991, the Regime filed a summons and complaint to foreclose on the units.  
 Approximately one year later, on February 25, 1992, the master filed an order 
 granting the Regime a judgment against RICO in the amount of $158,066.28 and 
 ordering the sale of the units.  
 The day after the decree of foreclosure 
 was filed, Strom Trust and Stark Leasing each filed to foreclose on their 
 mortgages with RICO, naming the Regime as a party.  The Regime answered and 
 filed a cross-claim against RICO.  In May of 1992, the circuit court granted 
 Strom Trust and Stark Leasing judgments of foreclosure of the mortgages.  
 The Regime filed motions to vacate the foreclosure judgment, challenging the 
 relative priority of the mortgages and otherwise challenging the validity 
 of the claims of the mortgage holders.  On June 29, 1992, RICO filed for voluntary 
 bankruptcy under Chapter 11 of the United States Bankruptcy Code.  The circuit 
 court subsequently entered an order vacating the foreclosure judgments of 
 Strom Trust and Stark Leasing and declaring the Regime had a first priority.  
 
 In May 1995, RICO, Strom Trust, Stark Leasing, 
 Wurman, Birnbaum, and the Regime agreed to settle.  As part of this settlement, 
 Strom Trust and Stark Leasing combined to form StarkStrom, which would own 
 all of RICOs assets, including the remaining twenty-eight condo units in 
 the Regime.  StarkStrom also agreed to issue a note and first mortgage to 
 the Regime for $230,000.  There would be no interest calculated on this amount 
 as long as StarkStrom did not default and made three payments of $76,667 on 
 June 1, 1996, June 1, 1997, and December 31, 1997. 
 [1]   In the Agreement, the Regime reserved the claims it believed it 
 had against Bergman and OSickey.  
 In September of 1995, the Regime filed 
 an amended answer and cross-claim against Hilton Head Realty, Bergman, and 
 OSickey alleging various causes of action, including:  violation of the Unfair 
 Trade Practices Act, [2] civil 
 conspiracy, Statute of Elizabeth [3] claims, piercing the corporate 
 veil, and liability under the doctrine of joint enterprise.  The master-in-equity 
 issued an order consolidating all these actions and realigning the parties. 
 [4]   In response to Bergmans motion for a jury trial, the master ruled 
 that the equitable causes of action, including piercing the corporate veil, 
 would not be tried by the jury.  The master then transferred the remaining 
 issues to the jury roster in circuit court. 
 The case against Bergman was tried in front of 
 a jury from April 30, 2001 to May 4, 2001. [5]   After the Regime rested its case, the trial 
 court granted Bergmans directed verdict motion as to the Unfair Trade Practices 
 Act cause of action but denied the directed verdict motions as to civil conspiracy 
 and joint venture.  In addition, the court allowed the Regime to amend its 
 complaint to include a cause of action for negligence.  
 At the close of trial, but before closing arguments, 
 Bergman made a motion for a directed verdict based on [his] argument made 
 at the close of [the Regime]s case.  This motion was denied.  Therefore, 
 the jury considered the following causes of action:  negligence, civil conspiracy, 
 and liability under the doctrine of joint enterprise.  The jury returned a 
 verdict for the Regime in the amount of $1,498,334.36 in actual damages and 
 $375,000 in punitive damages.  Bergman filed a motion for judgment notwithstanding 
 the verdict (JNOV), or, in the alternative, a motion for a new trial absolute 
 or a new trial nisi remittitur.  The trial court denied these 
 motions.  This appeal followed.  

 LAW/ANALYSIS

I.         
Motion to Amend the Pleadings
 Bergman argues the trial court 
 erred in allowing the Regime to amend its pleadings to add a cause of 
 action for negligence.  
 After the trial court denied Bergmans motions 
 for directed verdict, the Regime moved to amend the pleadings to include 
 a cause of action for negligence.  Bergmans attorney responded:

 Your Honor, I would oppose such an amendment.  We 
 have prepared our defense which include[s] the cross examination of the 
 plaintiffs witness and at this late stage an (sic) new cause of action 
 really added is inappropriate.  And I realize there is a rule allowing 
 the plaintiff in some circumstances to amend to conform for the pleadings 
 but I dont think its appropriate here.  

 The trial court agreed to allow the amendment, 
 but did not state any grounds for its ruling.  
 The
 South Carolina Rules of Civil Procedure provide for the amendment of
 pleadings: 

 When issues not raised by the pleadings are tried 
 by express or implied consent of the parties, they shall be treated in 
 all respects as if they had been raised in the pleadings.  Such amendment 
 of the pleadings as may be necessary to cause them to conform to the evidence 
 and to raise these issues may be made upon motion of any party at any 
 time, even after judgment; but failure so to amend does not affect the 
 result of the trial of these issues.  If evidence is objected to at the 
 trial on the ground that it is not within the issues made by the pleadings, 
 the court may allow the pleadings to be amended and shall do so freely 
 when the presentation of the merits of the action will be subserved thereby 
 and the objecting party fails to satisfy the court that the admission 
 of such evidence would prejudice him in maintaining his action or defense 
 upon the merits.  The court shall upon motion grant a continuance reasonably 
 necessary to enable the objecting party to meet such evidence.  Upon allowing 
 any such amendment or evidence the Court shall state in the record the 
 reason or reasons for allowing the amendment or evidence.  In the event 
 the Court should try issues not raised by the pleadings, it shall state 
 in the record all such issues tried and the reason therefor.

 Rule 15(b), SCRCP.
 Motions to amend pleadings to 
 conform to proof may be made upon motion of any party at any time, even 
 after judgment . . . .  Ball v. Canadian Am. Express Co., 314 
 S.C. 272, 275, 442 S.E.2d 620, 622 (Ct. App. 1994).    Generally, amendments 
 to conform to proof should be liberally allowed.  Pool v. Pool, 
 329 S.C. 324, 328, 494 S.E.2d 820, 822 (1998).   It is well established 
 that a motion to amend is addressed to the sound discretion of the trial 
 judge, and that the party opposing the motion has the burden of establishing 
 prejudice.  Foggie v. CSX Transp., Inc., 315 S.C. 17, 23, 431 
 S.E.2d 587, 590 (1993).  The prejudice Rule 15 envisions is a lack of 
 notice that the new issue is going to be tried, and a lack of opportunity 
 to refute it.  Pool, 329 S.C. at 328-29, 494 S.E.2d at 823.  If 
 late amendment of the pleadings would cause prejudice to the opposing 
 party, the court should either deny the amendment or grant a continuance 
 reasonably necessary to allow the opposing party to meet the amendment.  
 Ball, 314 S.C. at 275, 442 S.E.2d at 622. 
 Bergman only opposed the amendment 
 due to the lateness of the motion rather than the sufficiency of evidence 
 to support a cause of action for negligence.  That the motion to amend 
 came after the Regime rested its case does not prevent the trial judge 
 from granting such an amendment.  Simply because an amendment to conform 
 to proof was made late in the trial affords no basis for holding that 
 the amendment comes too late. . . .  [T]he question is one of prejudice 
 to the opposing party.  Soil & Material Engrs, Inc. v. Folly 
 Assocs., 293 S.C. 498, 501, 361 S.E.2d 779, 781 (Ct. App. 1987).  
 
 On appeal, Bergman argues he was prejudiced 
 because he had absolutely no opportunity to present any evidence as to 
 the duties and responsibilities of a corporate officer, had no opportunity 
 to present any experts to discuss duties and responsibilities of corporate 
 officers, and had no opportunity to show that [his] actions fell within 
 the established standard of care.  Bergman failed to raise these arguments 
 as grounds for his opposition to the motion to amend at the time of the 
 amendment.  Accordingly, these arguments are not properly before this 
 court.  See Glover v. North Carolina Mut. Life Ins. Co., 
 295 S.C. 251, 257, 368 S.E.2d 68, 72 (Ct. App. 1988) (stating this court 
 will not reverse a trial courts ruling on a motion on a basis not presented 
 to the trial court).  
 At the time of the motion to amend, Bergman only 
 asserted that he would be prejudiced by the amendment because his preparation 
 of his defense, including the cross-examination of the Regimes witnesses 
 would have been different.  We find Bergman has failed to demonstrate 
 sufficient prejudice for this court to reverse the trial courts allowance 
 of the amendment.  One of the Regimes primary witnesses during its case 
 was Bergman himself, who testified again during his own case after the 
 amendment.  Furthermore, at the time of the amendment, Bergman did not 
 move for a continuance as is allowed by Rule 15(b), SCRCP.  As Bergman 
 did not take steps to secure more time in which to prepare a defense for 
 the new negligence cause of action, we cannot conclude the trial court 
 abused its discretion in finding Bergman was not so prejudiced as to mandate 
 denying the amendment.
 Bergman asserts the trial court 
 erred in failing to state for the record its reasons for allowing the 
 amendment as required by Rule 15 (b), SCRCP.  As Bergman failed to object 
 to this omission, the issue is not preserved for our review.  Wilder 
 Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (stating 
 that it is axiomatic that an issue cannot be raised for the first time 
 on appeal, but must have been raised to and ruled upon by the trial judge 
 to be preserved for appellate review).  Similarly, Bergman failed to request 
 the court require the Regime to set forth evidence to support its motion.  
 He cannot complain about the ambiguity of the motion on appeal.  See 
 id.  Bergmans inclusion of these arguments in his post-trial motions 
 does not preserve them for appeal.  See Patterson v. Reid, 
 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct.App.1995) (A party cannot 
 for the first time raise an issue by way of a Rule 59(e) motion which 
 could have been raised at trial.).
 Accordingly, we affirm the trial 
 courts grant of the motion to amend the pleadings to include a cause 
 of action for negligence.  As Bergman does not challenge the sufficiency 
 of the evidence to support the cause of action for negligence, we must 
 affirm the jurys verdict in favor of the Regime on this issue.  
II.      Civil Conspiracy and Joint Venture
Causes of Action         
Bergman argues the trial court 
 judge erred in denying his motion for  judgment notwithstanding the verdict 
 (JNOV) as to the civil conspiracy cause of action.  Bergman also argues 
 the trial court judge erred in denying his motions for JNOV and a new 
 trial absolute as to his liability under the doctrine of joint venture.  
 We do not need to reach these arguments under the two-issue rule. 
 Under the two issue rule, when 
 the jury returns a general verdict involving two or more issues and its 
 verdict is supported as to at least one issue, the verdict will not be 
 reversed on appeal.  Anderson v. South Carolina Dep't of Highways 
 & Pub. Transp., 322 S.C. 417, 419, 472 S.E.2d 253, 254 (1996). 
 The supreme court in Anderson illustrated the two issue rule 
 as follows:

 [The] two applications of the two issue rule are 
 illustrated in the following example:  A case is submitted to the jury 
 on the issues of defamation and invasion of privacy.  The jury returns 
 a general verdict for the plaintiff.  The defendant appeals, arguing that 
 the trial court erred by failing to direct a verdict on the defamation 
 issue.  Under one application of the two issue rule, an appellate court 
 would affirm because defendant has failed to appeal the invasion of privacy 
 issue as well.  Assuming, however, that the defendant has appealed both 
 issues, the appellate court would affirm on the basis of a second application 
 of the two issue rule, if either of the two issues supported
 affirmance.  
 

 Id. at 420, 472 S.E.2d at 254.  
 Thus, under this second application of the 
 two issue rule, we find it unnecessary to address the issues of civil 
 conspiracy and liability under the joint venture doctrine as our ruling 
 on the negligence issue requires affirmance of the jurys general verdict. 
  
III.      
Motions for a new trial nisi remittitur or absolute. 
 Bergman argues the trial court judge 
 erred in denying his motion for a new trial nisi remittitur or new 
 trial absolute.  We disagree.
 The trial court alone has the power 
 to grant a new trial nisi when it finds the amount of the verdict 
 to be merely inadequate or excessive.  ONeal v. Bowles, 314 S.C. 
 525, 527, 431 S.E.2d 555, 556 (1993). The denial of a motion for a new trial 
 nisi is within the trial courts discretion and will not be reversed 
 on appeal absent an abuse of discretion.  Id.  On appeal of the denial 
 of a motion for a new trial nisi, the appellate courts will reverse 
 only when the verdict is grossly inadequate or excessive requiring the granting 
 of a new trial absolute.  Id.  
 The trial courts decision to deny 
 a motion for new trial absolute is within its discretion and will not be 
 reversed absent an abuse of discretion.  Cock-N-Bull Steak House, Inc. 
 v. Generali Ins. Co., 321 S.C. 1, 9, 466 S.E.2d 727, 731 (1996).  When 
 reviewing the denial of a motion for new trial, the court must look at the 
 testimony and inferences raised therefrom in the light most favorable to 
 the nonmoving party.  Welch v. Epstein, 342 S.C. 279, 302-03, 536 
 S.E.2d 408, 420 (Ct. App. 2000).  The trial court must set aside a verdict 
 only when it is shockingly disproportionate to the injuries suffered and 
 thus indicates that passion, caprice, prejudice, or other considerations 
 not reflected by the evidence affected the amount awarded.  Id. 
 at 302, 536 S.E.2d at 420.  A jurys determination of damages is entitled 
 to substantial deference by this court.  Knoke v. S.C. Dept. of Parks, 
 Recreation & Tourism, 324 S.C. 136, 141, 478 S.E.2d 256, 258 (1996).  
 
 In support of his 
 argument that the jurys verdict was excessive, Bergman raises four issues.  
 We find these issues are not properly before this court.  Bergman asserts 
 the Regime failed to mitigate its damages by selling the foreclosed units 
 and that it waived its right to collect the debt from Bergman individually 
 by waiving its right to collect from RICO.  We find no indication in the 
 record that Bergman presented these issues to the jury.  See McClary 
 v. Massey Ferguson, Inc., 291 S.C. 506, 511, 354 S.E.2d 405, 408 (Ct. 
 App. 1987) (stating whether the party acted reasonably to mitigate damages 
 is ordinarily a question for the jury); Stovall Bldg. Supplies, Inc. 
 v. Mottett, 305 S.C. 28, 35, 406 S.E.2d 176, 180 (Ct. App. 1990) (stating 
 the question of waiver is a matter for the jury or fact finder).  Bergman 
 also argues that the regime fees assessed against RICO after the order of 
 foreclosure should be stricken from the damages award.  Bergman, however, 
 failed to object when the Regime introduced these damages into evidence.  
 See Jackson v. Speed, 326 S.C. 289, 307, 486 S.E.2d 750, 759 
 (1997) (a party who fails to object to the admission of evidence when it 
 is offered cannot make its admission a ground for appeal).   
 Finally, Bergman argues that because 
 the Regimes settlement with StarkStrom impaired the collateral that secured 
 the debt, the Regime should be barred from seeking an alternative recovery 
 against Appellant.  Our review of the record, however, reveals Bergman failed 
 to raise this or any of the other above arguments until his motion for a 
 new trial.  See Patterson v. Reid, 318 S.C. 183, 185, 456 
 S.E.2d 436, 437 (Ct.App.1995) (A party cannot for the first time raise 
 an issue by way of a Rule 59(e) motion which could have been raised at trial.).  
 Accordingly none of these issues are preserved for our review.   
Viewing
the evidence in the light most favorable to the nonmoving party, the Regime, we
find the trial court did not err in denying Bergmans motion for a new trial. 
In the order denying Bergmans post-trial motions, the court found the
jurys award of damages was not unreasonable. 
The court based this determination on the fact that the jury awarded
$1,498,334.36 in actual damages and the Regime had submitted an exhibit at trial
in which it itemized damages totaling $1,498,334.36. 
After Bergman waived a procedural objection, this exhibit was admitted
into evidence without objection.  The
trial court found Bergman had not presented any evidence that the jury was
controlled by corruption, prejudice, passion or caprice. 
We agree with the trial judges findings and find there was no abuse of
discretion in denying the new trial motion. 
There was sufficient evidence in the record to support the jurys
verdict  down to the penny  and Bergman failed to show the jurys
verdict resulted from any kind of improper motive. 
Accordingly, we conclude the trial court judge did not err in denying
Bergmans motions for a new trial nisi remittitur or absolute.
CONCLUSION
Based upon the foregoing, the trial court judges findings are
 AFFIRMED.
 HUFF, STILWELL, and CURETON,
 JJ., concur.  

 
 [1] StarkStrom made the first payment on June 1, 1996; 
 however, the parties agreed to restructure the next two payments and pay 
 the amounts in increments until the full amount was paid.  
 
 
 
 
 [2] S.C. Code Ann. §§ 39-5-10 et seq. (1985 & Supp. 
 2003).
 
 
 
 
 [3] S.C. Code Ann. § 27-23-10 (Supp. 2003). 
 
 
 
 
 [4] As a result of this realignment, the parties were arranged in 
 the same manner as is currently before this court.
 
 
 [5] The Regime settled its claims against OSickey 
 prior to trial.