THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Bobby and Clara
 Holland, Respondents/Appellants,
 v.
 South Carolina
 Electric and Gas Company and Joe Pizzo, individually and as Owner of JOCO 
 Construction; and BES, Incorporated, Defendants,
 of whom:
 South Carolina
 Electric and Gas Company is Appellant/Respondent.
 
 
 

Appeal From Beaufort County
 Roger M. Young, Circuit Court Judge

Unpublished Opinion No. 2009-UP-281
Heard April 23, 2009  Filed June 4, 2009

AFFIRMED

 
 
 
 A. Parker Barnes, Jr., of Beaufort, Charles E. Carpenter, Jr. and
 Steven J. Pugh, both of Columbia, for Appellant/Respondent.
 Louis S. Moore, of College Park, R. Bentz Kirby  and Glenn
 Walters, both of Orangeburg, for Respondents/Appellants.
 
 
 

PER CURIAM: In this civil case, we must
 determine whether the trial court erred in denying South Carolina Electric and
 Gas Company's (SCE&G) motion for a judgment notwithstanding the verdict
 (JNOV) and motion for a new trial absolute.  Additionally, Bobby and Clara Holland
 (collectively the Hollands) appeal the trial court's decision to reduce the
 punitive damages award from approximately $300,000 to $50,000.  We affirm. 
FACTS
In 2001, the Hollands were developing a parcel of land at St.
 Helena Island in Beaufort County to build their retirement home and develop a
 subdivision for sale to third parties.  The Hollands employed Beaufort
 Engineering Corporation to do the engineering work, Joe Pizzo and his company
 JOCO Construction to install the water system and waterline, and SCE&G to
 install the electrical system.  
According to Mr. Holland, he showed SCE&G the approximate
 location of the waterline Pizzo installed.  Subsequently, SCE&G installed
 the power lines and by its own admission, cut the waterline in two places. 
 According to Pizzo, SCE&G also cut the waterline in a third place. 
 SCE&G failed to notify Pizzo or the Hollands of the cuts.  
Following the waterline being cut, Pizzo was preparing the
 waterline for inspection and acceptance by Beaufort Jasper Water and Sewer
 Authority (BJWSA).  During this process, Pizzo became aware of the cuts and
 offered to repair them.  Rather than accept this offer, SCE&G employed its
 crew to do the repairs.  Despite the repairs, the waterline failed a pressure
 test.  Consequently, BJWSA did not accept the waterline, and as a result, the
 Hollands were unable to obtain clean running water to their home and the
 subdivision.  
Pizzo informed the Hollands SCE&G's repairs were improper. 
 Pizzo proceeded to make the necessary repairs to the waterline, and in so
 doing, he discovered a third cut in the waterline.  Subsequent to his repairs,
 Pizzo conducted a pressure test without the aid of BJWSA and concluded the
 waterline held the requisite amount of pressure to be accepted by BJWSA.  Pizzo
 submitted a bill to SCE&G for the repair work.  Initially, SCE&G
 communicated to Pizzo it would pay the bill in full; this amount was later
 reduced to one-half, then reduced again to one-third, and no payment was ever made. 
 Pizzo refused to certify the line to BJWSA's approval because neither SCE&G
 nor the Hollands would pay him for the repairs he had made.
As a result, the Hollands were unable to secure clean running
 water to their house and were forced to dig a well in order to obtain running
 water.  This had an impact on the Hollands' personal life.  The couple's
 disabled son had a tube in his stomach that prohibited the Hollands from
 bathing him with the contaminated well water.  Additionally, Mr. Holland
 testified the well water was the worst well water he had ever seen.  According
 to Mr. Holland, the water would stain his house and the couple's possessions in
 the house.  
The Hollands filed suit against SCE&G.  The Hollands claimed
 damages in excess of $300,000 for lost sales in the subdivision, dead palmetto
 trees, the cost to connect the well to supply water to their home, damage to
 their home and appliances as a result of the well water, and the cost to
 install a well to a sold lot in the subdivision.  
After the trial, the jury returned a verdict in favor of the
 Hollands for $162,630.  The jury found the Hollands 18.75% negligent, and their
 damages were reduced to $132,136.87.  The jury also awarded the Hollands
 $314,583 in punitive damages.  SCE&G filed post trial motions for JNOV, a
 new trial absolute, a new trial nisi remittitur based on the
 jury's award of actual damages, and a new trial nisi remittitur based on the jury's award of punitive damages.  The trial court denied the
 motions for JNOV and a new trial absolute but granted the motion for a new
 trial nisi remittitur based on the award of punitive damages. 
 Consequently, the trial court reduced the amount of punitive damages to
 $50,000.  The Hollands and SCE&G have appealed. 
LAW/ANALYSIS
SCE&G argues the trial court erred in failing to
 grant its motion for JNOV on the grounds the Hollands (1) failed to mitigate
 their damages; (2) failed to prove SCE&G damaged their waterline; (3) were
 not legally entitled to install or operate the waterline; and (4) were not
 entitled to punitive damages.  In the alternative, SCE&G appeals the trial
 court's denial of its motion for a new trial absolute and asks this court to
 reverse the judgment and/or remand the case for a new trial.  Additionally, the
 Hollands appeal the trial court's decision to reduce the punitive damages from
 approximately $300,000 to $50,000.  We address each argument in turn. 
I.
 SCE&G's Appeal   
Initially,
 SCE&G argues it was entitled to JNOV or a new trial nisi remittitur based on the jury's award of
 actual damages because the Hollands could
 have mitigated their damages by paying Pizzo to have the waterline certified. 
 We disagree. 
When reviewing the denial of a motion for JNOV, this court must
 employ the same standard as the trial court, by viewing the evidence and all
 reasonable inferences in the light most favorable to the nonmoving party.  Welch
 v. Epstein, 342 S.C. 279, 299-300, 536 S.E.2d 408, 418-19 (Ct. App. 2000). 
 The trial court must deny a JNOV motion when the evidence yields more than one
 inference or its inference is in doubt.  Id.  An appellate court will
 reverse the trial court only when no evidence supports the ruling below.  Id. 
 When considering a JNOV motion, neither the trial court nor the appellate court
 has the authority to decide credibility issues or to resolve conflicts in the
 testimony or evidence.  Id.  A motion for JNOV may be granted only if no reasonable jury
 could have reached the challenged verdict.  Id.  The jury's verdict will
 be affirmed if any evidence exists that sustains the factual findings implicit
 in its decision.  Id.
A party injured by the acts of another is required to do those
 things a person of ordinary prudence would do under the circumstances to
 mitigate his damages, but the law does not require him to exert himself
 unreasonably or incur substantial expense to avoid damages.  McClary v.
 Massey Ferguson, Inc., 291 S.C. 506, 510-11, 354 S.E.2d 405, 407-08 (Ct.
 App. 1987).  Moreover, the reasonableness of actions to mitigate damages is
 ordinarily a question for the jury.  Id.  
Initially,
 we note the Hollands had paid Pizzo before he began installing the waterline. 
 The Hollands testified they called numerous plumbers and three sewer workers to
 get the waterline approved by BJWSA.  However, once these individuals became
 aware of the ongoing dispute between Pizzo and SCE&G, they refused to get
 involved.  Testimony was offered that showed SCE&G told the Hollands not to
 pay Pizzo for the repair work because SCE&G described him as a "money
 grabber."  Mrs. Holland stated a SCE&G representative described Pizzo
 as "a money grabber and all [Pizzo] wanted was money, and the kind of
 money he wanted was too much for the repair."  While SCE&G argues the
 Hollands should have paid Pizzo to mitigate their damages, their own representative
 told the Hollands not to pay Pizzo the price he was asking.  Additionally, the
 jury may have considered this issue in arriving at its conclusion to hold the
 Hollands 18.75% negligent.  Based on this, we cannot say the trial court
 committed reversible error in denying SCE&G's JNOV motion.   
SCE&G
 also argues the trial court should have granted its new trial nisi remittitur motion based on the Hollands' alleged failure to mitigate their damages.  Specifically,
 SCE&G contends this court should reduce the verdict to the amount the
 Hollands could have paid Pizzo to have the waterline operational.  We
 disagree.  
This court's decision in Howard v. Roberson succinctly sets
 out the law regarding a new trial nisi. 

 The
 grant or denial of new trial motions rests within the discretion of the trial
 judge, and his decision will not be disturbed on appeal unless his findings are
 wholly unsupported by the evidence or the conclusions reached are controlled by
 error of law.  The trial [judge] alone has the power to grant a new trial nisi when he finds the amount of the verdict to be merely inadequate or excessive. 
 However, compelling reasons must be given to justify invading the jury's
 province by granting a new trial nisi additur or remittitur. 
 The consideration for a motion for a new trial nisi additur or 
 remittitur requires the trial judge to consider the adequacy of the verdict in light of
 the evidence presented.  Great deference is given to the trial judge who heard
 the evidence and is more familiar with the evidentiary atmosphere at trial, and
 who thus possesses a better-informed view of the damages than this Court.  

376 S.C. 143,
 155-56, 654 S.E.2d 877, 883-84 (Ct. App. 2007) (internal quotations and
 citations omitted).  Based on the testimony
 described above and our applicable standard of review, we cannot say the trial
 court erred in denying SCE&G's new trial nisi remittitur motion.  
Next,
 SCE&G contends it is entitled to JNOV because the Hollands failed to
 present evidence the waterline was functional and operational prior to
 SCE&G's cutting it.  Apparently SCE&G is arguing the Hollands failed to
 establish SCE&G's cut caused the damage to the waterline resulting in the
 waterline not working properly.  We disagree.
Generally, in order to recover damages, the evidence should be
 such as to enable the jury to determine the amount of the damages with
 reasonable certainty or accuracy.  Collins Entm't, Inc. v. White, 363
 S.C. 546, 559, 611 S.E.2d 262, 269 (Ct. App. 2005).  Although the existence,
 causation, or amount of damages cannot be left to conjecture, guess, or
 speculation, proof with mathematical certainty of the amount of loss or damage
 is not required.  Id.  
At
 the time SCE&G damaged the waterline, Pizzo was in the process of preparing
 the line for testing in order to certify the line and obtain acceptance by
 BJWSA.  During this time,
 Pizzo became aware of two cuts to the waterline.  SCE&G fixed these cuts;
 nonetheless, the waterline failed a pressure test.  Consequently, BJWSA did not
 accept the waterline, and as a result, the Hollands were unable to obtain clean
 running water to their home.  Pizzo proceeded to make the necessary repairs to
 the waterline, and in so doing, he discovered a third place the waterline had
 been cut.  SCE&G did not fix this cut.  After Pizzo completed all the
 repairs, he conducted a pressure test and concluded the waterline held the
 requisite amount of pressure to be accepted by BJWSA.  
Viewing the
 evidence and its inferences in the light most favorable to the Hollands, it is
 reasonable to infer SCE&G's failure to remedy the third cut to the
 waterline prevented the waterline from being certified by Pizzo and ultimately
 passing the pressure test required by BJWSA.  As such, SCE&G's cuts and its failure to fix these cuts
 caused the damage to the waterline that resulted in it not working properly.  As
 such, the trial court did not commit reversible error when it denied
 SCE&G's JNOV motion, because the Hollands presented evidence the waterline
 was functional and operational prior to SCE&G's cutting it.
Next,
 SCE&G asserts it was entitled to JNOV because the Hollands engaged in an
 illegal activity by constructing and installing their water system without the
 proper permit.  We disagree. 
The
 South Carolina Department of Health and Environmental Control (DHEC) issued the
 Hollands a water supply construction permit on January 11, 1999.  This permit
 states, "Construction must be completed prior to January 10, 2001, or this
 permit will expire."  The Hollands retained Pizzo to install their water
 system in June 2001, by which time the DHEC permit had expired.  
DHEC
 regulations allow for an extension of a permit if requested.  S.C. Code Ann.
 Regs. 61-58.1(B)(9) (Supp. 2008).  Mr. Holland testified he obtained another
 permit from DHEC prior to Pizzo installing the water system.  Viewing the evidence and the inferences that can be reasonably
 drawn therefrom in the light most favorable to the Hollands, we conclude the
 Hollands were in possession of a valid permit when Pizzo installed the water
 system, and therefore, the trial court properly concluded SCE&G was not entitled to JNOV.
In its next argument, SCE&G contends it is entitled to a new
 trial absolute because the trial court erred in charging the jury on the
 notification requirements set forth in section 58-35-60 of the
 South Carolina Code (Supp. 2008).  We disagree.
The grant or denial of a new trial motion is left to the
 discretion of the trial court, and its decision will not be disturbed on appeal
 unless its findings are wholly unsupported by the evidence or the conclusions
 reached are controlled by an error of
 law.  Umhoefer v. Bollinger, 298
 S.C. 221, 224, 379 S.E.2d 296, 297 (Ct. App. 1989).  In deciding whether to assess
 error to a trial court's denial of a motion for a new
 trial, we must consider the testimony and reasonable inferences to be drawn
 therefrom in the light most favorable to the nonmoving party.  Id.
The
 law to be charged to the jury must be determined by the evidence offered at
 trial.  State v. Patterson, 367 S.C. 219, 231-32, 625 S.E.2d 239, 245-46
 (Ct. App. 2006).  In South Carolina, a trial court is required to charge only
 the current and correct law of this state.  Id.  A jury charge
 is correct if it contains the correct definition of the law when read as a
 whole.  Id.  On review, an
 appellate court considers the charge as a whole in view of the evidence and
 issues presented at trial.  Id.  
Section
 58-35-60, entitled the Underground Utility Damage
 Prevention Act, in pertinent part provides:

 (a) [B]efore
 commencing any excavation or demolition operation . . . each person responsible
 for such excavation or demolition shall serve advance written or telephonic
 notice of intent to excavate or demolish not less than three, but not more than
 ten full working days
 1. On each operator which has underground utilities located in the
 proposed area of excavation or demolition; or
 2. If the proposed area of excavation or
 demolition is served by an association . . . on such association and on each
 operator which has underground utilities in the proposed area of excavation or
 demolition that is not receiving the services of the association; where
 demolition of a building is proposed, operators shall be given reasonable time
 to remove or protect their underground utilities before demolition of the
 building is commenced.

If the language in a statute
 is plain and unambiguous and conveys a clear and definite meaning, there is no
 need to resort to the rules of statutory interpretation.  City of Columbia v. Am. Civil
 Liberties Union of S.C., Inc., 323 S.C. 384, 387, 475 S.E.2d 2d 747, 749
 (1996).  If the
 terms of a statute are clear, the court must apply those terms according to
 their literal meaning.  Id.  
In
 the present case, the language of section 58-35-60 is plain and unambiguous. 
 Subsection (a)(1) requires any "person" excavating to contact each
 "operator" that has an underground utility located in the place to be
 excavated.  "Person" is defined as "any
 individual, owner, corporation, partnership, association, or any other entity
 organized under the laws of any state; any subdivision or instrumentality of a
 state; and any authorized representative thereof."  S.C. Code Ann. §
 58-35-20(6) (Supp. 2008).  "Operator" is defined as "any person
 who owns or operates a utility."  § 58-35-20(8).
SCE&G
 qualifies as a "person" because it is a corporation organized under
 the laws of a state.  The Hollands, Pizzo, and Pizzo's company, JOCO Construction, had already installed the waterline when SCE&G
 came to install the electric lines.  Either the Hollands or Pizzo were the
 operators for purposes of section 58-35-60 because either party owned the
 waterline that was being installed.  SCE&G, by its own admission, could not
 say whether the Hollands or Pizzo were contacted prior to the installation of
 the electric lines.[1] 
 Additionally, the purpose of section 58-35-60 is to prevent the exact thing that
 occurred in this case, to prevent underground utilities that are in place from
 being damaged.  In order to effectuate this purpose, subsections (a)(1) and (2)
 require an excavator to contact others who might have utilities in the place that
 is to be excavated so they may have the opportunity to have their lines marked
 in order to prevent damage.  
An
 expert witness, Roger Davis, testified that anyone who excavates has a duty to
 contact others who might own utilities that could be damaged by the
 excavation.  According to Davis, the Palmetto Utility Protection Service (PUPS)
 was established as a clearing house that an excavator must call so PUPS can
 notify the other owners of utility lines that an excavation is going to take
 place.  Davis also stated the purpose of this is to give the other owners an
 opportunity to go to the excavation location and mark the location of their
 lines so their lines will not be damaged.  Davis testified an excavator
 contacts PUPS, which in turn issues a ticket that provides documentation a call
 to PUPS has been made.  Davis stated before any excavation is done, water and
 sewer industry and underground utilities industry standards require PUPS be
 contacted to determine the location of any other underground utilities to
 prevent damaging them.  Davis also testified SCE&G had a duty to contact
 the Hollands because they should have been given the opportunity to have their
 lines marked in order prevent damage.  
A
 representative from SCE&G testified he called PUPS prior to putting in the
 electric lines.  However, he could not locate the ticket number and stated,
 "I don't know what happened to it."  In viewing the evidence in the
 light most favorable to nonmoving party, this ticket provides documentation the
 call to PUPS was made.  Based on the foregoing, we cannot say the trial court
 committed reversible error in denying SCE&G's new trial motion. See Umhoefer,
 298 S.C. at 224, 379 S.E.2d at 297 (holding the denial of a new trial motion
 will not be disturbed unless the trial court's findings are wholly unsupported
 by the evidence and when considering such a denial the
 testimony and reasonable inferences to be drawn therefrom are to be construed
 in the light most favorable to the nonmoving party).
Finally, SCE&G contends it was entitled to a JNOV on the
 jury's award of punitive damages because, at most, its conduct was simple
 negligence.  We disagree.
In order to collect an award of punitive damages, the plaintiff
 bears the burden of proving by clear and convincing evidence the defendant's
 misconduct was willful, wanton, or in reckless disregard of the plaintiff's
 rights.  Welch, 342 S.C. at 301, 536 S.E.2d at 419.  A conscious failure
 to use due care constitutes willfulness.  Id.  The question of punitive
 damages must be submitted to the jury if more than one reasonable inference can
 be drawn from the evidence as to whether the defendant's behavior was reckless,
 willful, or wanton.  Id.  The amount of punitive damages awarded remains
 largely within the discretion of the jury, as reviewed by the trial court.  Gamble v. Stevenson, 305 S.C. 104, 112, 406 S.E.2d 350, 355 (1991). This court will set aside the trial courts determination if it has
 abused its discretion amounting to an error of law.  Id.  An appellate
 court must affirm the trial court's punitive damages finding if any evidence
 reasonably supports the trial court's factual findings.  Austin v. Specialty
 Transp. Servs., Inc., 358 S.C. 298, 314, 594 S.E.2d 867, 875 (Ct. App. 2004).
In
 the present case, the trial court's decision to deny SCE&G's JNOV motion is
 supported by the evidence.[2] 
 As discussed above, SCE&G's failure to contact PUPS to determine the location of underground
 utilities violated industry standards.[3]  Additionally, SCE&G failed to take responsibility for the third cut in the
 waterline, which ultimately led to the Hollands' inability to obtain clean
 running water.  Moreover, SCE&G told the Hollands not to pay Pizzo and
 described him as a "money grabber," which led to Pizzo's
 unwillingness to certify the line for BJWSA inspection.  Along these same
 lines, SCE&G communicated
 to Pizzo it would pay the bill in full; this amount was later reduced to
 one-half, then reduced again to one-third, and no payment was ever made.  Mrs.
 Holland testified she contacted an SCE&G representative after its crew
 fixed the two cuts and complained the waterline was not functional and asked
 when it would get fixed.  The SCE&G representative responded, "That
 will never happen."  Once SCE&G learned
 of the third cut, its attempt to escape liability by promising Pizzo he would
 be paid and urging the Hollands not to pay Pizzo required the question of punitive damages to be submitted to the
 jury, because more than one reasonable inference could have been drawn as to
 whether SCE&G's behavior was reckless, willful, or wanton.    
Moreover, in South Carolina the causative violation of a statute
 constitutes negligence per se and is evidence of recklessness and willfulness,
 requiring the submission of the
 issue of punitive damages to the jury.  Austin, 358 S.C. at 314-15, 594
 S.E.2d at 875-76. (Ct. App. 2004).  Although violation of a statute does not
 constitute recklessness, willfulness, and wantonness per se, it does provide
 some evidence the defendant acted
 recklessly, willfully, and wantonly.  Id.  Ultimately, the jury determines
 whether the defendant has been reckless, willful, and wanton.  Id.
As we previously explained, SCE&G violated section 58-35-60
 when it failed to contact others who might
 have utilities in the place to be excavated so they may have the opportunity to
 have their lines marked to prevent damage.  As such, the question of whether
 this constituted reckless, willful, and wanton behavior was for the jury to
 decide.  Id.  The trial court did not abuse its discretion in denying
 SCE&G's JNOV motion concerning the jury's award
 of punitive damages.
II. The Hollands' Appeal
At the conclusion
 of the trial, SCE&G filed numerous post-trial motions including a new trial nisi remittitur based on the jury's award of punitive damages.  The trial court granted this
 motion and reduced the amount of punitive damages from approximately $300,000
 to $50,000.  On appeal, the
 Hollands argue the trial court's ruling that the award of punitive damages was
 the result of jury passion is in error.  We disagree.
The decision to grant or deny a new trial motion rests within the discretion of the
 trial court, and its decision will not be disturbed on appeal unless its
 findings are wholly unsupported by the evidence or the conclusions reached are
 controlled by an error of law.  Howard, 376 S.C. at 155-56, 654 S.E.2d
 at 883-84.  The trial court alone has the power to grant a new trial nisi if it finds the amount of the verdict to be merely inadequate or excessive.  Id. 
 Great deference is given to the trial court, which heard the evidence and is
 more familiar with the evidentiary atmosphere at trial, and thus, possesses a
 better-informed view of the damages than this court. [4]  Id.  
In the present case, the trial court granted the nisi motion because it felt the amount of punitive damages was the result of the
 jury's sympathy for the Hollands' son.  The following testimony was heard by
 the jury about the Hollands' son: 

 Q: [Mrs. Holland,] tell the jury about your son. 
 A: My son, whose name was Shawn, was a beautiful boy, and he was
 born severely mentally retarded.  He was not a burden to us. He was just . . . a
 lot of work, and I was his care-giver, and I took care of him from the time he
 was born until he passed away in [2004].  And he required a lot, and my husband
 was just very good with him.  I mean, he would stand at the window in the
 evening looking for my husband to come home from work.  So he was  he cared
 for him as well as I did, but I was home all day with him.
 Q: How did the water situation, or the water from the well[[5]], affect the taking care of Shawn?
 A: It was kind of difficult because Shawn needed a lot of care. .
 . . [W]e were together constantly until, you know, I got him ready for school. 
 He would spend a few hours in school.  I was there when he got home, so I did
 everything for him. I fed him, I changed him, and that was a little difficult
 because I'd have to keep washing him, and I really didn't like to use [the
 well] water because I wasn't sure what was going on with that water. . . .  
 Q: How did the well water affect you and your husband if you
 bathed in it? 
 A: You'd itch and you'd have to use almost a gallon of lotion,
 because your skin stayed real dry, and you'd itch a lot.  You would just itch
 and scratch until your skin burned.  So it wasn't very good[,] it wasn't a very
 good thing for bathing.
 . . . .
 Q: Did you bathe Shawn in this water?
 A: No. We didn't want to because we didn't know what was happening
 with this water, and eventually Shawn got into a feeding tube, and we were
 particularly scared then because sometime[s] he would pull the feeding tube out
 and I had to insert it back in.  So I really didn't want to put him in the well
 water because . . . he also had been diagnosed as terminally ill before we left
 Washington.
 Q: All right. Well, we aren't saying [SCE&G] is responsible .
 . . .
 A: Oh, no.  Oh, no.  My son is they are not responsible for my
 son's death.  
 A: Did you bathe Shawn on a daily basis?  
 Q: Yes.  I had to. 

 The trial court reasoned the amount of punitive damage was the
 result of sympathy the jury felt for the Hollands' "plight for having to
 take care of a son in those conditions," and it concluded an element of
 passion was involved in the amount of punitive damages.  Based on the quoted
 testimony, discerning the trial court's concern is not difficult.  The
 testimony of Mrs. Holland could have easily swayed the jury to award $314,583
 in punitive damages.  We believe the trial court's decision to grant the nisi motion was within its discretion.  See id. (holding the decision to grant or deny new trial motions rests within the discretion
 of the trial court, and great deference is given to the trial court, which
 heard the evidence and is more familiar with the evidentiary atmosphere at
 trial and thus possesses a better-informed view of the damages than this court).  

CONCLUSION
Accordingly,
 the trial court's decision is 
AFFIRMED.   
HUFF,
 WILLIAMS, and KONDUROS, JJ., concur.

[1] We need not determine who was the operator, the
 Hollands or Pizzo, because SCE&G failed to notify either.  Thus, which
 party is considered the operator is irrelevant.  See Sloan v. Greenville
 County, 356 S.C. 531, 552, 590 S.E.2d 338, 349 (Ct. App. 2003) (holding the
 function of an appellate court is not to give opinions on abstract or
theoretical matters).  
[2] As previously noted, the trial
court reduced the punitive damages from approximately $300,000 to $50,000.  
[3] While we recognize an SCE&G representative
 testified he called PUPS, he could not produce the documentation to
 substantiate his claim.  Our standard of review when
 adjudicating the denial of a motion for JNOV is constrained by viewing the
 evidence and all reasonable inferences in the light most favorable to the
 nonmoving party.  Welch, 342 S.C. at 299-300, 536 S.E.2d at 418-19. 
 Additionally, the trial court must deny a JNOV motion when the evidence yields
more than one inference or its inference is in doubt.  Id.
[4] The Hollands incorrectly set out our standard of
 review.  They state the standard of review for JNOV.  However the trial court
granted SCE&G's nisi motion.  
[5] As mentioned, when the Hollands could not obtain
water from BJWSA they installed a well.