516 S.E.2d 665

**Aaron Earl HINTON, Respondent,**

v.

**DESIGNER ENSEMBLES, INC., Appellant.**

**No. 2981.**

Court of Appeals of South Carolina.

Heard March 9, 1999.

Decided April 26, 1999.

Rehearing Denied June 26, 1999.

308

Randall S. Hiller, of Greenville, for appellant.

Eddie R. Harbin, of Greenville, for respondent.

HOWELL, Chief Judge:

Designer Ensembles, Inc. (Designer) appeals the trial court's decision awarding Aaron Earl Hinton lost wages and reinstatement under S.C.Code Ann. § 41–1–80 (Supp.1998). We affirm in part and reverse in part.

## FACTS

Designer employed Hinton in December 1993 as a shipping department supervisor. As a supervisor, Hinton understood and was often required to enforce Designer's attendance policy. Under this policy, if an employee was absent for three consecutive days without calling Designer or for five consecutive days without providing Designer a doctor's excuse, the employee could be terminated.

On August 2, 1994, Hinton injured his right ankle and lower back in a work-related accident. Prior to the accident, Hinton had never missed a work day or arrived late, nor had he been disciplined by Designer for poor work performance.

After the accident, Hinton received emergency treatment from Greenville Memorial Hospital, which then referred Hinton to Dr. James Wallace. Dr. Wallace prescribed medication and referred Hinton to Dr. Collin Kanar when therapy failed to help. Dr. Kanar prescribed medication, performed a bone scan, and administered a steroid injection before transferring Hinton to Dr. Kevin Kopera of the Health and Occupational Facility at Greenville Memorial Hospital. Under Dr. Kopera's care, Hinton engaged in physical therapy and felt significant improvement. Dr. Kopera never took any X-rays or ordered an MRI test. In late October, Dr. Kopera released Hinton for work subject to certain restrictions and told Hinton that Designer intended to accommodate these restrictions.

Hinton's personnel manager, Marie Sitter, obtained notice of Hinton's release and requested he return to work or provide a doctor's excuse. Sitter also expressed Designer's desire to accommodate Hinton's restrictions. Hinton met with Sitter; Joe Nettles, Hinton's facility manager; and Carter Mahaffey, Hinton's immediate supervisor, to discuss accommodating Hinton's restrictions. Hinton's supervisors told him

they only needed him to use his brain to supervise and that his job would not require physical exertion. His supervisors told him they would permit him to take breaks and even lie down when necessary. As a result, Hinton agreed to attempt work again.

Upon returning to work on November 1, Hinton worked a full shift, but felt pain in his back. Hinton left a message on Mahaffey's answering machine stating he experienced pain but planned on working the next day. On November 2, Hinton reported to work, but called Mahaffey at home complaining of pain. Hinton told Mahaffey he planned to leave if the pain remained. A member of Hinton's crew called Mahaffey an hour later and reported that Hinton had left work. Hinton testified that after approximately two hours, he informed Mahaffey the pain rendered work unbearable. Due to his pain, Hinton attempted to schedule another appointment with Dr. Kopera, who refused to see Hinton. Instead, Kopera scheduled an appointment for Hinton to see Dr. Stanley Reid, an orthopaedic specialist.

On November 3, Hinton called and complained of too much pain to work. Mahaffey informed Hinton the absence was unexcused because Kopera had released Hinton to work. On November 4, 1994, Hinton called and complained that he was in too much pain to work. , Mahaffey again told Hinton the absence was unexcused without a doctor's excuse. On November 5, a Saturday, Hinton did not go to work and did not call, even though Mahaffey had previously required Hinton to work on Saturdays until January 1. On November 7, Hinton neither went to work nor called to tell Designer he would be absent. On November 8, Hinton called and complained of too much pain to work. When Mahaffey again told Hinton the absence was unexcused, Hinton responded by claiming someone called in for him on Monday. On November 9, 1994, Hinton called and complained of too much pain to work and Mahaffey again told Hinton the absence was unexcused. Hinton called on November 10, but Mahaffey was in a meeting. On November 11, 1994, Mahaffey called Hinton. When Hinton returned the call, Mahaffey transferred Hinton to Nettles, who discharged Hinton for having too many unexcused absences.

On November 15, Dr. Reid ordered an MRI which revealed a herniated disc as the source of Hinton's problem. Dr. Reid determined Hinton reached maximum medical improvement (MMI) on January 20, 1995, and issued Hinton a 5 percent impairment rating. On February 12, 1995, Dr. Reid released Hinton to work retroactive to January 20, 1995. On February 14, 1995, Hinton attempted to resume working, but Designer told Hinton he no longer had a job. Hinton eventually obtained a job as a shipping manager at another company, but he resigned over salary negotiations in February 1996. He has not worked since.

Hinton received his full salary from Designer for the first thirty days after the accident and then began receiving temporary total disability payments. In June 1995, a hearing was held on Designer's motion to stop payment of the benefits. At the hearing, Hinton testified his injuries continued to worsen, necessitating further medical treatment. The hearing commissioner's order (the 1995 order) found Hinton reached MMI on January 20, 1995, found Hinton suffered a 14 percent permanent partial disability, and granted Designer's stop payment request. The hearing commissioner also required Hinton to refund a portion of the temporary total disability payments.

On November 9, 1995, Hinton filed a complaint against Designer alleging retaliatory discharge and wrongful discharge in violation of public policy. Designer answered, denying liability on both theories. Though the public policy action was eventually dismissed, the retaliatory discharge claim went to trial. At trial, Nettles testified he reminded Hinton on two occasions to obtain a doctor's excuse to avoid violating Designer's policy. After the second warning in late October, Hinton never provided a doctor's excuse except for a one-day excuse from St. Francis Hospital emergency room. Hinton acknowledged that failing to provide a doctor's excuse for eleven days would violate Designer's policy, but testified that he understood from his visits with Dr. Kopera that Kopera had communicated with Designer about Hinton's continued difficulty working. In addition, Sitter testified that she talked with Kopera on several occasions, but could not remember whether she continued to speak with him up until and after Hinton was fired. Sitter also testified that she "quite possibly" could have

talked to Dr. Reid but could not recall definitely. Moreover, Sitter admitted she often talked with Designer's workers' compensation carrier, who kept Sitter informed about Hinton's treatment status.

After hearing the evidence, the trial court announced its ruling for Hinton, noting that Designer knew of Hinton's condition and fired Hinton while he was receiving temporary total disability benefits. In its June 2, 1997, order (the 1997 order), the court found that Designer knew or should have known of Hinton's condition, that Hinton had a sterling attendance record, and that Hinton was fired while receiving temporary total disability benefits. The 1997 order concluded that Hinton was discharged in retaliation against his workers' compensation claim.

## LAW/ANALYSIS

A retaliatory discharge claim under Workers' Compensation Act section 41–1–80 is an action in equity. *See Wallace v. Milliken & Co.*, 305 S.C. 118, 120, 406 S.E.2d 358, 359 (1991). In an action in equity, the appellate court may find facts in accordance with its own view of the preponderance of the evidence. *See Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). "However, this broad scope of review does not require us to disregard the findings of the trial judge who was in a better position to evaluate the credibility of the witnesses." *Smothers v. Richland Mem'l Hosp.*, 328 S.C. 566, 570, 493 S.E.2d 107, 109 (Ct.App.1997).

### I.

Designer argues that the trial court erred in ruling for Hinton because the evidence was insufficient to establish a retaliatory discharge. We disagree.

Section 41–1–80 provides, in pertinent part:

No employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the South Carolina Workers' Compensation Law (Title 42 of the 1976 Code), or has testified or is about to testify in any such proceeding.

> Any employer who violates any provision of this section is liable in a civil action for lost wages suffered by an employee as a result of the violation, and an employee discharged or demoted in violation of this section is entitled to be reinstated to his former position. The burden of proof is upon the employee.

S.C.Code Ann. § 41–1–80 (Supp.1998). "The elements of a claim under § 41–1–80 are: (1) institution of workers' compensation proceedings; (2) discharge or demotion; and (3) a causal connection between (1) and (2)." *Hines v. United Parcel Service, Inc.*, 736 F.Supp. 675, 677 (D.S.C.1990).

■ An employer has certain affirmative defenses under section 41–1–80, including "wilful or habitual ... absence from work; ... failure to meet established employer work standards; ... [and] violating specific written company policy for which the action is a stated remedy of the violation." § 41–1–80.

> While the employer has the burden of proving its affirmative defenses, ... "[t]he ultimate burden of persuading the trier of fact that the employer retaliatorily discharged the employee for exercising statutory rights under the Act remains *at all times with the employee.* The burden of persuasion never shifts and the employee bears the burden of persuasion that the reason given for termination was pretextual.... The employee may succeed in this, either directly by persuading the court that the discharge was significantly motivated by retaliation for her exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence."

*Wallace*, 305 S.C. at 122, 406 S.E.2d at 360 (quoting *Buckner v. General Motors Corp.*, 760 P.2d 803, 807 (Okla.1988)) (ellipsis in original); *see also Kummer v. Royal Gate Dodge*, 983 S.W.2d 568, 572 (Mo.Ct.App.1998) ("Even though an employer produces evidence of a legitimate reason for the employee's discharge, the plaintiff who is able to persuade the [trier of fact] that the employer's reason is pretextual ... is entitled to a verdict.") (quoting *Wiedower v. ACF Industries, Inc.*, 715 S.W.2d 303, 307 (Mo.Ct.App.1986)).

■ We find sufficient evidence of retaliatory discharge. Proof of retaliatory discharge ordinarily requires using cir-

cumstantial evidence. *See Lattie v. SHS Enterprises, Inc.,* 300 S.C. 417, 419, 389 S.E.2d 300, 301 (Ct.App.1990) (citing *Wallace* ). In *Lattie,* this Court reversed the trial court's grant of summary judgment to the employer. 300 S.C. at 418, 389 S.E.2d at 300–01. Lattie had sustained an on-the-job injury and applied for worker's compensation benefits. *Id.* at 419, 389 S.E.2d at 301. Sixteen days after initiating the worker's compensation proceedings, SHS fired Lattie. *Id.* According to SHS, it fired Lattie "either because Lattie failed to meet its work standards or because Lattie mismanaged the business, causing it to lose money." *Id.* Lattie submitted an affidavit that he had always met SHS's work standards. *Id.* We concluded that, "[t]he proximity in time between Lattie's instituting the worker's compensation proceedings and his firing, when coupled with evidence of his satisfactory work performance, [was] sufficient to enable Lattie to establish a prima facie case ... on his claim for retaliatory discharge." *Id.*

Similarly, in the current case, Designer fired Hinton approximately three months after his work-related accident. Moreover, Hinton had an exemplary work record with no absences. Nonetheless, Designer maintains that it fired Hinton for having too many unexcused absences. Thus, the question becomes whether Hinton carried his burden to show that this reason was pretextual.

■ Designer contends that it established a legitimate reason for firing Hinton and that Hinton provided no proof of pretext other than a close proximity of time between the beginning of his workers' compensation claim and his firing. As a result, Designer claims the case at bar is controlled by *Johnson v. J.P. Stevens & Co.,* 308 S.C. 116, 417 S.E.2d 527 (1992). We disagree. In *Johnson,* J.P. Stevens had a policy of terminating probationary employees like Johnson who were absent more than four days. 308 S.C. at 117, 417 S.E.2d at 528. Johnson sustained an injury by accident arising out of and in the course of employment. *Id.* After being released to work by his treating physician, Johnson saw a second physician who told Johnson not to return to work. *Id.* Johnson missed nine days of work during his probationary period and was fired because of excessive absenteeism and blackout spells that made it dangerous for him to do his job. *Id.* The court

did not mention any evidence of prior work history. Also, Johnson admitted that the employer's reasons for firing him were legitimate. *Id.* at 118, 417 S.E.2d at 529. The court held that, "[i]n light of the conceded legitimate nonretaliatory motives for the termination," proximity in time alone did not meet the employee's burden. *Id.*

In contrast, in the case at bar, there is evidence showing pretext in addition to proximity in time. Here, Hinton had a sterling prior work history with no previous absences. Even though Hinton did not personally produce a written doctor's excuse, the record supports the trial court's finding that "[a]gents of the Defendant were in constant contact with the treating physicians and knew, or should have known, of the plaintiff's condition and continued complaints." Sitter testified that she had been in constant contact with the worker's compensation carrier and that the carrier kept Sitter informed as to the treatments with Dr. Kopera and the Center for Occupational Services. She also admitted that she had several conversations with Dr. Kopera about Mr. Hinton and that she "quite possibly" could have talked to Dr. Reid, but she did not recall. When asked whether the conversations with Kopera continued up until and even after the date Hinton was fired, Sitter replied that she did not know. As a result of visits with Dr. Kopera, Hinton was under the impression that Kopera had communicated to Designer Hinton's inability to work subsequent to his attempted return. From this evidence, whether Designer knew about the legitimacy of Hinton's absences after his attempted return to work essentially became a credibility contest. The trial court found that Designer's explanation for firing Hinton was pretextual. Therefore, the trial court evidently resolved this credibility contest in Hinton's favor. We decline to disturb the trial court's factual findings, given that they are so dependent on the court's determinations of the witnesses' credibility. *See Smothers,* 328 S.C. at 570, 493 S.E.2d at 109 (holding that, even though the appellate court may find its own facts on review of an equity case, it may defer to the trial court when the factual issues depend on credibility). Thus, there is evidence that Hinton substantially complied with Designer's absentee policy and that, as a result, Designer's proffered reasons were not legitimate. In addition to the proximity of

time, these facts support a finding of pretext and meet Hinton's burden of proof. Consequently, we conclude that, but for Hinton's maintaining a workers' compensation claim against Designer, he would not have been discharged.[1]

 Designer argues the trial court erred in drawing an inference of pretext from Designer's decision to discharge Hinton while Hinton received temporary total disability benefits. Because we conclude the trial court's order is affirmable without reference to the receipt of temporary total disability benefits, we do not decide whether it was error for the court to consider such evidence. In its oral ruling at trial, the trial court noted that it believed an employer could not fire a person receiving temporary total disability benefits. However, the trial court also indicated that the evidence showed Designer had consistent contact with the treating physicians and knew of Hinton's physical status. Further, in its written order, the court also mentioned other facts, including Hinton's excellent attendance record and Designer's constant contact with the treating physicians concerning Hinton's condition, in support of its ruling. As discussed above, these other facts support a finding of retaliatory discharge without reference to Hinton's receipt of temporary total disability benefits when

---

1. We note that, in the 1997 order, the trial court improperly used the "substantial factor" causation test in analyzing this retaliatory discharge action. The substantial factor test of causation "requires proof that filing ... the claim constituted an important or significant motivating factor for discharge." *Wallace*, 305 S.C. at 121, 406 S.E.2d at 359–60. However, the proper test of causation in this context is the "determinative factor" test, "which requires the employee to establish that he would not have been discharged 'but for' the filing of the [workers' compensation] claim." *Id.* at 121, 406 S.E.2d at 360. Although the determinative factor test is more stringent than the substantial factor test, neither test requires proof that filing the claim was the sole motivating factor behind the discharge. *Id.* While the trial court used the incorrect test, it also made findings of fact based on the credibility of the witnesses. We find evidence to support the trial court's findings and give the court's credibility determinations deference in determining whether Hinton's firing was in retaliation to his instituting a worker's compensation claim. After viewing the facts in this manner, we conclude, as discussed above, the evidence establishes that Hinton's claim was a determinative factor in the decision to discharge him. Hence, Designer was not prejudiced by the trial court's use of the incorrect standard. *See Brown v. Pearson*, 326 S.C. 409, 417, 483 S.E.2d 477, 481 (Ct.App.1997) ("An error not shown to be prejudicial does not constitute grounds for reversal.").

fired. We do not interpret the 1997 order as holding Hinton's discharge retaliatory solely because of his receipt of temporary total disability benefits when fired.[2] Hence, even if the trial court improperly considered Hinton's receipt of temporary total disability benefits when fired, there is no prejudice from this consideration. *See Brown,* 326 S.C. at 417, 483 S.E.2d at 481 ("An error not shown to be prejudicial does not constitute grounds for reversal.").

## II.

■ Designer argues that the trial court erred in failing to direct a verdict in its favor at the close of Hinton's case, because Hinton failed to present evidence of damages.[3] We disagree.

---

**2.** Even if we interpret the court's comments at trial as basing its ruling for Hinton solely on his receipt of temporary total disability benefits when fired, our holding on this issue would not change. "Judgments in general ... are not final until written and entered. Until written and entered, the judge retains discretion to change his mind and amend his oral ruling accordingly." *Doe v. Doe,* 324 S.C. 492, 501, 478 S.E.2d 854, 859 (Ct.App.1996) (citation omitted). Because we conclude that the 1997 order did not rely exclusively on the receipt of temporary total disability benefits in its finding retaliatory discharge, we can still affirm the order if, as in this situation, the other reasons mentioned in the order support a finding of retaliatory discharge and our review of the record supports such a conclusion.

**3.** Technically, Designer appealed the refusal to grant a directed verdict. However, directed verdict motions under Rule 50, SCRCP, are only appropriate in jury trials. *See James F. Flanagan, South Carolina Civil Procedure* at 401 (2d ed. 1996) ("Rule 50 permits the defending party in a jury action to challenge the sufficiency of the evidence at the close of the plaintiff's case, and for each party to move for a directed verdict at the close of all the evidence." (emphasis added)). An action for discharge in retaliation against filing a workers' compensation claim is an action at equity, tried without a jury. "Motions challenging the sufficiency of the evidence in non-jury cases are decided under Rule 41(b)[, SCRCP]." *Id.*

> After the plaintiff in an action tried by the court without a jury has completed the presentation of his evidence, the defendant ... may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.
>
> The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

▆▆▆ In light of our finding that Designer discharged Hinton in retaliation for instituting a workers' compensation claim, Hinton is entitled to lost wages. *See* § 41–1–80. Hinton bears the burden of establishing damages. *Id.* On appeal, Designer claims that Hinton has not met this burden. Designer does not contest, and in fact admits in its brief, that Hinton testified on cross-examination that he found new employment on September 5, 1995 at a higher wage. Rather, Designer claims that the only evidence of this subsequent employment and Hinton's period of unemployment came during cross-examination of Hinton. We disagree. The 1995 order notes that Hinton's average weekly wage was $482.53.[4] Moreover, Hinton admitted on direct examination that his doctors cleared him to work on January 20, 1995. Answers to questions on cross-examination are evidence. Just like any other evidence, they may be used to prove the plaintiff's case. We therefore affirm the trial court's award of lost wages.[5]

▆▆▆ Additionally, we find sufficient evidence Hinton adequately attempted to mitigate his damages.

---

Rule 41(b), SCRCP; *accord Johnson,* 308 S.C. at 118, 417 S.E.2d at 529 ("Rule 41(b) allows the judge as the trier of facts to weigh the evidence, determine the facts and render a judgment against the plaintiff at the close of his case if justified."). Thus, we review this issue under Rule 41(b) to determine whether there is sufficient evidence to support the damages verdict.

4. Designer notes that the 1995 order was admitted into evidence over its objection. However, it does not argue that the trial court's ruling was incorrect. Therefore, this argument is not preserved for our review. *See First Sav. Bank v. McLean,* 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (finding that a party's argument not argued in its brief was abandoned).

5. Designer also contends that the trial court improperly questioned Hinton's counsel after the close of Hinton's case and that Hinton's counsel's responses were contrary to evidence already before the court. The content of this discussion centered on the Hinton's period of unemployment. Hinton's counsel claimed the period was from January 20, 1995 until September 5, 1995. However, given that Designer has conceded on appeal that Hinton admitted on cross-examination he was employed again starting in September 1995 and that Hinton testified on cross-examination he started looking for work in January 20, 1995, we conclude Designer has not been prejudiced by the trial judge's actions. *See Brown,* 326 S.C. at 417, 483 S.E.2d at 481 ("An error not shown to be prejudicial does not constitute grounds for reversal.").

The doctrine of avoidable consequences operates in wrongful discharge actions, as in others, to permit a wrongfully discharged employee to recover only damages for losses which, in the exercise of due diligence, he could not avoid. The employee's so-called duty to mitigate his damages permits the employee to recover the amount of his losses caused by the employer's breach reduced by the amount the employee obtains, or through reasonable diligence could have obtained, from other suitable employment.

*Chastain v. Owens Carolina, Inc.*, 310 S.C. 417, 419–20, 426 S.E.2d 834, 835 (Ct.App.1993) (quoting *Small v. Springs Industries, Inc.*, 300 S.C. 481, 388 S.E.2d 808 (1990)). "[T]he party who claims damages should have been minimized has the burden of proving they could have been avoided or reduced." *Chastain*, 310 S.C. at 420, 426 S.E.2d at 835. "Whether an employee has fully mitigated his damages is a question of fact to be determined from the circumstances of each case." *Id.* at 420, 426 S.E.2d at 836.

Hinton attempted to return to work at Designer after reaching MMI and receiving his release from Dr. Reid but was told he was discharged. Hinton continued to seek employment after reaching MMI and eventually found employment in September 1995. Although Designer argues that Hinton's testimony at the workers' compensation hearing was inconsistent with his claim that he attempted to find work, Hinton testified at trial that he was looking for work. Consequently, whether or not Hinton actually attempted to mitigate his damages was a question of Hinton's credibility. On this issue, we defer to the trial court. *See Smothers*, 328 S.C. at 570, 493 S.E.2d at 109 (holding that the appellate court can defer to the trial court on credibility issues in equity cases). Designer also offered no evidence that similar jobs were available prior to September 1995. *See Chastain*, 310 S.C. at 420, 426 S.E.2d at 835–36 (using defendant's failure to offer evidence of similar work reasonably available in support of conclusion that former employee made a reasonable effort to mitigate his damages after he was discharged in retaliation for filing a workers' compensation claim). Thus, we find the record supports a conclusion Hinton sufficiently attempted to mitigate his damages.

■ Finally, Designer argues that reinstatement is inappropriate. We agree. Although it is within the trial court's discretion to grant reinstatement, based on our own view of the preponderance of the evidence, we feel reinstatement is inappropriate in this case. *See Horn v. Davis Elec. Constrs., Inc.*, 307 S.C. 559, 562, 416 S.E.2d 634, 635–36 (1992) (holding reinstatement, as an equitable remedy, is similar to injunctive relief and therefore discretionary). Hinton ultimately found another job doing substantially similar work at a higher salary, although later voluntarily resigned from this position in a dispute over his employment terms. In addition, this litigation has generated very serious animosity between the parties. Because of this animosity and because of Hinton's demonstrated ability to find other work, we find that the trial court's reinstating Hinton to his former position was an abuse of discretion.

For the foregoing reasons, the trial court's order is

**AFFIRMED IN PART AND REVERSED IN PART.**

CONNOR, J., concurs.

GOOLSBY, J., dissents in a separate opinion.

GOOLSBY, Judge (dissenting):

I dissent. I would hold Designer successfully established an affirmative defense to Hinton's action. I would further hold Hinton failed to meet his burden to show either that his termination " 'was significantly motivated by retaliation for [his] exercise of statutory rights' " or that the reason Designer gave for his discharge, namely his unexcused absences, was pretextual. *Wallace v. Milliken & Co.*, 305 S.C. 118, 122, 406 S.E.2d 358, 360 (1991) (quoting *Buckner v. General Motors Corp.*, 760 P.2d 803, 807 (Okla.1988)).

Under S.C.Code Ann. § 41–1–80 (Supp.1998), an employer defending against a retaliatory discharge claim "shall have as an affirmative defense ... violating specific written company policy for which the action is a stated remedy of the violation."

As the majority notes, under Designer's work attendance policy, an employee absent for five consecutive days without providing a doctor's excuse could be terminated. Hinton knew

and understood this policy and even enforced it himself against his subordinates. Despite Designer's efforts to accommodate Hinton, he failed to report to work for five consecutive days without providing a doctor's excuse.

The majority acknowledges "Hinton did not personally produce a written doctor's excuse," but further holds "there is evidence that Hinton substantially complied with Designer's absentee policy and that, as a result, Designer's proffered reasons were not legitimate." Specifically, the majority notes that "the record supports the trial court's finding that '[a]gents of the Defendant were in constant contact with the treating physicians and knew, or should have known, of the plaintiff's condition and continued complaints.' "

Even if this finding is correct, I would hold Hinton failed to show by the preponderance of the evidence that Designer would not have discharged him " 'but for' the filing of the [workers' compensation] claim." *Wallace* at 121, 406 S.E.2d at 360. As the trial court noted, Designer agreed to compensate Hinton for his work-related injuries and provided medical care and temporary total disability benefits from the date of Hinton's injury until he reached maximum medical improvement. Furthermore, because Hinton's doctor had released him to return to work, it was reasonable for Designer to expect Hinton to resume his duties. It is also undisputed Designer attempted to help Hinton work within the restrictions imposed by his doctor. Hinton also participated in a meeting during which his superiors outlined a workload in which his responsibilities were limited to supervision and agreed he could take breaks and even lie down when necessary.

Although the majority correctly cites *Lattie v. SHS Enters., Inc.,* 300 S.C. 417, 389 S.E.2d 300 (Ct.App.1990) for the proposition that proof of retaliatory discharge ordinarily requires use of circumstantial evidence, the circumstances in that case can be easily distinguished from the facts here.

First, *Lattie* was an appeal from summary judgment and held only that the plaintiff had established a prima facie case for retaliatory discharge. It did not reach the merits of the claim.

Second, *Lattie* had presented evidence directly refuting the factual allegations behind his employer's purported reasons

for firing him. In contrast, Hinton does not deny he was aware of Designer's work attendance policy and failed to comply with it. Even if we were to accept the majority view that Hinton "substantially complied" with the policy, I have found no evidence in the record that Designer had ever given him reason to believe that substantial compliance would suffice. As the majority relates, Hinton was advised by his immediate supervisor that his absences were unexcused without a doctor's excuse. Significantly, nothing in the record suggests Designer ever relaxed its work attendance policy for any of its other employees or otherwise enforced it in a discriminatory manner.

I would reverse.