THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Ann H. Hughes Appellant,
 v.
 Oconee County,
 South Carolina; Ron H. Rabun, individually and Administrator of Oconee
 County, South Carolina; Bill Rinehart, Marion Lyles, J. Frank Ables, Steve
 Moore and Tommy Crumpton, as Duly Elected Council Members of Oconee County
 Council; Bill Rinehart, Marion Lyles, and H. Frank Ables, individually; Kay
 Olbon, individually and as Human Resources Officer of Oconee County, South
 Carolina; and Sandra Smith, individually and as the Present
 Secretary/Administrative Assistant to the Administrator of Oconee County,
 South Carolina, Respondents
 
 
 

Appeal from Oconee County
James C. Williams, Jr., Circuit Court Judge
Unpublished Opinion No. 2007-UP-461
Submitted October 1, 2007  Filed October 11, 2007

REVERSED

 
 
 
 Larry C. Brandt, of Walhalla, for Appellant.
 Thomas
 A. Bright, of Ogletree, of Greenville, for Respondent.
 
 
 

PER
 CURIAM:    Ann H. Hughes (Hughes)
 appeals the grant of summary judgment with regard to her breach of contract
 claim against Oconee County, South Carolina; Bill Rinehart, Marion Lyles, H.
 Frank Ables, Steve Moore and Tommy Crumpton, as Duly Elected Council Members of
 Oconee County Council (collectively County).  The trial court granted Countys
 summary judgment motion based on the doctrine of avoidable consequences.  We reverse.[1]
FACTS
In
 December of 2000, Hughes began working as the Oconee County Supervisor.  She
 maintained this position until Governor Mark Sanford suspended her in May 2003,
 after criminal charges were brought against her in Oconee and Pickens Counties for embezzlement and misconduct in office.  Hughes remained suspended from
 office until April 2004, when, pursuant to a deal offered by Oconee County, the charges were dismissed.  While charges were pending against her in Oconee County, criminal charges were initiated against her in Anderson County for misuse of a
 telephone at Clemson University during her previous employment.  Hughes was
 acquitted of the Anderson County charge in February 2005. 
Hughes
 signed a new employment contract (Contract) with Oconee County on April 19,
 2004, where she would be retained as a consultant on the Americans with
 Disabilities Act for a period of three (3) years beginning May 1, 2004 and
 ending April 30, 2007. This Contract included health insurance and state
 retirement benefits for her employment term.  Additionally, the contract
 stated:

 Oconee
 County, South Carolina will pay Ann Hamilton Hughes the sum of $50,000 per
 year payable on a bi-weekly basis at the rate of $1,923.08 for the three (3)
 year term.  Ann Hamilton Hughes may be terminated for cause for any future
 violation of the laws of the United States, the State of South Carolina or
 ordinances, policies and procedures of Oconee County and is subject to all such
 laws, ordinances, policies and procedures.
 As part
 and parcel of the consideration of this contract of employment, Ann Hamilton
 Hughes will execute a general release of liability releasing Oconee County, all County employees and elected officials for any causes of action she might
 have through the date of the release, including past salary and attorney fees
 and costs.

Under
 the Contract, Hughess duties were to:  (1) perform written assessments of all
 County buildings and Oconee County School buildings for compliance with the
 Americans with Disabilities Act (ADA); (2) execute such other duties concerning
 the ADA as required by the Chief Administrative Officer of Oconee County; and (3) answer only to the Chief Administrative Officer of Oconee County.  In return, the County agreed to pay for any training, travel, lodging and meals with
 connection to training necessary and incident to perform ADA assessments, and
 provide office equipment and materials necessary for the performance of her
 work.
Hughes
 submitted her resignation as County Supervisor on April 20, 2004, as well as a
 signed release, which provided:

 FOR THE
 SOLE CONSIDERATION of the employment of Ann Hamilton Hughes as a consultant on
 the Americans with Disabilities Act for a period of three (3) years beginning
 May 1, 2004 and ending April 30, 2007 pursuant to a binding contract with
 Oconee County, South Carolina at the sum of $50,000 per year payable on a
 bi-weekly basis at the rate of $1,923.08 for the three (3) year term, the
 receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby
 releases and forever discharges Oconee County, all County employees and elected
 officials for any causes of action Ann Hamilton Hughes might have through the
 date of the release, including past salary and attorney fees and costs, their
 successors, heirs, executors, administrators, agents and assigns, who might be
 liable or who might be claimed to be liable, none of whom admit any liability
 to the undersigned but all expressly deny any liability, from any and all
 claims, demands, damages, actions, causes of action or suits of any kind or
 nature whatsoever, and particularly on account of any injuries, known and
 unknown, both to person and property, which have resulted or may in the future
 develop from the arrest of Ann Hamilton Hughes for which she was found not
 guilty and/or the charges being dismissed, with prejudice.
 The
 undersigned hereby declares that the terms of this settlement have been
 completely read and are fully understood and voluntarily accepted for the
 purpose of making a full and final compromise adjustment and settlement of any
 and all claims, disputed or otherwise, on account of the injuries and damages
 above mentioned, and for the express purpose of precluding forever any further
 or additional claims arising out of the aforesaid accident and/or injury.  As
 this release relates to employees and elected officials, this release is
 conditioned however, that ALL copies of investigative materials
 collected from Ms. Hughes computer, which could in any way be considered
 personal, will be delivered to her attorneys on or before May 1, 2004.  No such
 investigative file in either and/or offices shall be disseminated by either
 entity or individually.  In the event any person elected or employed by Oconee County, who has direct or indirect access, disseminates any such personal material,
 Ann Hamilton Hughes may institute civil litigation in this regard and the civil
 release executed by her in consideration for the contract of employment shall
 not be a bar to such action.  All limitations of actions are tolled conditioned
 on non-disclosure of personal information and data.
 The
 undersigned hereby accepts this three (3) year employment contract as set forth
 herein as full and final settlement for any and all claims and injuries except
 as stated hereinabove.

In May 2004, Hughes
 commenced employment as a consultant with Oconee County under the Contract. 
 Ron Rabun, the Administrator of Oconee County, terminated Hughes on June 2,
 2005, in a letter stating:  

 As you
 know, your personnel file as ADA Coordinator contains numerous counseling and
 disciplinary actions addressing performance and attendance issues prior to this
 final action.  Therefore, the record will show that progressive disciplinary
 measures have been followed to justify this final action.
 Consequently,
 your employment with the County will be terminated on Friday, June 3, 2005.

On June 3, 2005,
 Hughes filed a complaint alleging:  (1) breach of contract; (2) abuse of
 process; (3) guaranty; (4) tortious interference with contractual relations;
 and (5) civil conspiracy.  She amended her complaint on June 30, 2005.  The
 County filed a motion to dismiss or strike certain portions of Hughess
 complaint on August 2, 2005, and filed an answer to the amended complaint on
 September 22, 2005, declaring Hughess termination was for cause.
The trial court
 dismissed Hughess guaranty cause of action on September 27, 2005.  Hughes
 subsequently voluntarily dismissed all other claims except breach of contract.
The County moved
 for summary judgment on May 5, 2006, arguing Hughes, in her deposition
 testimony, established she made no efforts to mitigate her damages by seeking
 other employment.  Thus, the County contended no dispute existed on the issue
 of Hughess efforts to mitigate her damages.  At the July 31, 2006, motion
 hearing, the County referred to this relevant portion of Hughess deposition:

 Q:  Let
 me change direction on you again a little bit.  What are you doing today?
 A: 
 Nothing.
 Q:  What
 I mean by that is, are you employed?
 A:  No.
 Q:  Have
 you sought employment?
 A:  I
 asked about a part-time job and never heard back from them.
 Q:  From
 who?
 A:  At
 the Booksmith in Seneca, Tricia Lightweis.
 Q:  That
 was the Seneca?
 A:  Booksmith.
 Q: 
 Booksmith?
 A: 
 Uh-huh (affirmative).
 Q:  When
 would you have asked her?
 A:  Oh,
 gosh, shortly after I was terminated.
 Q:  Have
 you sought any other work other than that one position?
 A:  In
 short, no.
 
 Q:  Did
 every occasion that you went out produce a negative reaction?
 A:  I
 tried not to notice.
 Q:  So
 you dont know, is that what youre saying?
 A:  No. 
 What Im saying is, I tried to ignore it, the whispers, the glances, and the 
 what Im trying to say to you is, in essence, this quasi exile of mine is
 self-imposed, yes, but it is  was it something that I sat down and determined
 that I was going to do?  No.
 Q:  Was
 there anything that happened within the community, subsequent to the
 termination of your contract, that led you to conclude that this self-imposed
 exile was necessary?
 A: 
 Until this happened, until the termination in 2004, I was going out to dinner
 with my husband.  I went car shopping.  I went to Belks.  I visited friends,
 from time to time.  There were no  its impossible for me to tell you how
 often, but it did happen; not as frequently as it did prior to 2003.  But I can
 tell you, sitting here in this chair, that June of 2004 I have all but become a
 recluse in my own home.  I have made it my own prison.  But no, it was not a
 conscious decision, its something that has evolved over time.
 Q:  So
 June of 2004?
 A: 
 2005, Im sorry.

On
 August 25, 2006, the trial judge issued his order granting the Countys motion
 for summary judgment, reasoning:

 In the
 instant case, Defendants [County] supported their motion to dismiss Plaintiffs
 [Hughes] claims for lost wages and benefits with Plaintiffs own deposition
 testimony where in she admitted that she had made virtually no effort to look
 for work subsequent to her termination on June 2, 2005.  In the absence of any
 contrary evidence presented by Plaintiff, this testimony clearly establishes
 that Plaintiff did not mitigate her damages and there are no genuine issues of
 fact remaining for trial.  Plaintiff failed to present any evidence by way of
 deposition testimony, documents or affidavits indicating that there exists a
 genuine factual dispute related to Plaintiffs efforts to mitigate her
 damages.  While counsel for Plaintiff argued that no one would hire Plaintiff
 or that any attempts by Plaintiff to find work would have been futile, there
 was no evidence in the record on either of these issues.  As the arguments of
 counsel are not evidence for purposes of defeating summary judgment (see
 generally, West v. Gladney, 341 S.C. 127, 533 S.E.2d 334, 338
 (Ct. App. 2000)), these arguments are of no avail to Plaintiff.  In the absence
 of any such evidence, there are no factual disputes remaining for trial
 relating to Plaintiffs failure to mitigate her damages, and Defendants Motion
 for Summary Judgment as to Plaintiffs claim for back pay and benefits is
 hereby granted.

ISSUE
Did
 the trial court err in granting the Countys summary judgment motion based on
 the doctrine of avoidable consequences?
STANDARD OF REVIEW
In
 reviewing the grant of summary judgment, [an appellate court] applies the same
 standard that governs the trial court under Rule 56, SCRP:  summary judgment is
 proper when there is no genuine issue as to any material fact and the moving
 party is entitled to judgment as a matter of law. Pittman v. Grand Strand
 Entmt, Inc., 363 S.C. 531, 536, 611 S.E.2d 922, 925 (2005); Eagle
 Container Co., LLC v. County of Newberry, 366 S.C. 611, 619-620, 622 S.E.2d
 733, 737 (Ct. App. 2005); B & B Liquors, Inc. v. ONeil, 361 S.C. 267,
 269-270, 603 S.E.2d 629, 631 (Ct. App. 2004).  In determining whether any
 triable issue of fact exists, the evidence and all inferences that can
 reasonably be drawn therefrom must be viewed in the light most favorable to the
 nonmoving party.  Medical Univ. of South Carolina v. Arnaud, 360 S.C.
 615, 619, 602 S.E.2d 747, 749 (2004); Rife v. Hitachi Constr. Mach. Co.,
 Ltd., 363 S.C. 209, 213, 609 S.E.2d 565, 267 (Ct. App. 2005).  If triable
 issues are present, those issues must go to the jury.  Mulherin-Howell v.
 Cobb, 362 S.C. 588, 595, 608 S.E.2d 587, 592 (Ct. App. 2005).
Summary
 judgment is appropriate if the pleadings, depositions, answers to
 interrogatories, and admissions on file, together with affidavits, if any, show
 that there is no genuine issue as to any material fact and that the moving
 party is entitled to judgment as a matter of law.  Rule 56(c), SCRCP; Helms
 Realty, Inc. v. Gibson-Wall Co., 363 S.C. 334, 338, 611 S.E.2d 485, 487
 (2005); BPS, Inc. v. Worthy, 362 S.C. 319, 324, 608 S.E.2d 155, 158 (Ct.
 App. 2005).  On appeal from an order granting summary judgment, the appellate
 court will review all ambiguities, conclusions, and inferences arising in and
 from the evidence in a light most favorable to the non-moving party.  Willis
 v. Wu, 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004); see also Schmidt
 v. Courtney, 357 S.C. 310, 316, 592 S.E.2d 326, 330 (Ct. App. 2003)
 (stating that all ambiguities, conclusions, and inferences arising from the
 evidence must be construed most strongly against the moving party).
Summary
 judgment is not appropriate where further inquiry into the facts of the case is
 desirable to clarify the application of the law.  Gadson v. Hembree, 364
 S.C. 316, 320, 613 S.E.2d 533, 535 (2005); Montgomery v. CSX Transp., Inc.,
 362 S.C. 529, 541, 608 S.E.2d 440, 447 (Ct. App. 2004).  Even when there is no
 dispute as to evidentiary facts, but only as to the conclusions or inferences
 to be drawn from them, summary judgment should be denied.  Baugus v.
 Wessinger, 303 S.C. 412, 415, 401 S.E.2d 169, 171 (1991); Nelson v. Charleston County Parks & Recreation Commn, 362 S.C. 1, 5, 605 S.E.2d 744, 746
 (Ct. App. 2004).  When reasonable minds cannot differ on plain, palpable, and
 indisputable facts, summary judgment should be granted.  Ellis v. Davidson,
 358 S.C. 509, 518, 595 S.E.2d 817, 822 (Ct. App. 2004).  The party seeking
 summary judgment has the burden of clearly establishing the absence of a
 genuine issue of material fact.  McCall v. State Farm Mut. Auto. Ins. Co.,
 359 S.C. 372, 376, 597 S.E.2d 181, 183 (Ct. App. 2004).  Once the party moving
 for summary judgment meets the initial burden of showing an absence of
 evidentiary support for the opponents case, the opponent cannot simply rest on
 mere allegations or denials contained in the pleadings.  Regions Bank v.
 Schmauch, 354 S.C. 648, 660, 582 S.E.2d 432, 438 (Ct. App. 2003).  The
 nonmoving party must come forward with specific facts showing there is a
 genuine issue for trial.  Rife, 363 S.C. at 214, 609 S.E.2d at 568.
The
 purpose of summary judgment is to expedite the disposition of cases which do
 not require the services of a fact finder.  Dawkins v. Fields, 354 S.C.
 58, 69, 580 S.E.2d 433, 438 (2003) (quoting George v. Fabri, 345 S.C.
 440, 452, 548 S.E.2d 868, 874 (2001)); Rumpf v. Massachusetts Mut. Life Ins.
 Co., 357 S.C. 386, 393, 593 S.E.2d 183, 186 (Ct. App. 2004).  Summary
 judgment is a drastic remedy and should be cautiously invoked to ensure that a
 litigant is not improperly deprived of a trial on disputed factual issues.  Helena
 Chem. Co. v. Allianz Underwriters Ins. Co., 357 S.C. 631, 644, 594 S.E.2d
 455, 462 (2004); Hawkins v. City of Greenville, 358 S.C. 280, 289, 594
 S.E.2d 557, 561-562 (Ct. App. 2004).
DISCUSSION
Hughes claims the
 trial court erred in granting summary judgment because, viewing the evidence in
 the light most favorable to Hughes, material issues of fact exist concerning
 whether she made reasonable efforts to mitigate her damages.  We agree.
1.  The Doctrine of Avoidable
 Consequences and The Duty to Mitigate Damages
A party who has
 suffered injury or damage from the actionable conduct of another is under a
 duty to make all reasonable efforts to minimize the damages incurred and cannot
 recover damages that might have been avoided by the use of reasonable care and
 diligence.  Newman v. Brown, 228 S.C. 472, 480, 90 S.E.2d 649, 653
 (1955) (It is the undoubted general rule that it is the duty of the owner of
 the property, which is injured by the negligence of another, to use reasonable
 means to minimize the damages.); Currie v. Davis, 130 S.C. 408, 422,
 126 S.E. 119, 124 (1923) (affirming a jury instruction stating it is the duty
 of the injured party to mitigate his damages); Cobb v. Western Union Tel.
 Co., 85 S.C. 430, 433, 67 S.E. 549, 551 (1910); Sullivan v. Anderson,
 81 S.C. 478, 480, 62 S.E. 862, 863 (1908); Jones v. Telegraph Co., 75
 S.C. 208, 213-214, 55 S.E. 318, 320 (1906); Willis v. Telegraph Co., 69
 S.C. 531, 539, 48 S.E. 538, 540 (1904).  
An
 injured party is required to do what an ordinary, prudent person would do under
 similar circumstances to mitigate his damages.  Du Bose v. Bultman, 215
 S.C. 468, 471, 56 S.E.2d 95, 96 (1949); Fewell v. Catawba Power Co., 102
 S.C. 452, 464, 86 S.E. 947, 950 (1915) (stating one seeking to hold another
 liable for damages must use reasonable efforts to mitigate such damages); M.
 C. Heath & Co. v. Postal Telegraph-Cable Co., 87 S.C. 219, 234, 69 S.E.
 283, 287-288 (1910) (holding there is a duty to minimize damages as a
 reasonable, prudent person would under like circumstances).  Nevertheless, this
 duty to mitigate is not without limit:  A party injured by the acts of another
 is required to do those things a person of ordinary prudence would do under the
 circumstances to mitigate damages; however, the law does not require unreasonable
 exertion or substantial expense for this to be accomplished.  Genovese v.
 Bergeron, 327 S.C. 567, 572, 490 S.E.2d 608, 611 (Ct. App. 1997) (citing McClary
 v. Massey Ferguson, Inc., 291 S.C. 506, 510, 354 S.E.2d 405, 407 (Ct. App.
 1987)); Chastain v. Owens Carolina, Inc., 310 S.C. 417, 420, 426 S.E.2d 834,
 835 (1993); Tri-Continental Leasing Corp. v. Stevens, Stevens & Thomas,
 P.A., 287 S.C. 338, 342, 338 S.E. 2d 343, 346 (Ct. App. 1985).
The
 duty to mitigate losses applies to contracts.  Cisson Constr., Inc. v.
 Reynolds & Assocs., Inc., 311 S.C. 499, 503, 429 S.E.2d 847, 849 (Ct.
 App. 1993); Mid-Continent Refrigerator Co. v. Way, 263 S.C. 101, 106,
 208 S.E.2d 31, 33 (1974); U.S. Rubber Co. v. White Tire Co., 231 S.C.
 84, 95, 97 S.E.2d 403, 409 (1956) (holding a landlord is under a duty to
 minimize damages upon a tenants breach of lease); Burkhalter v. Townsend,
 139 S.C. 324, 332, 138 S.E. 34, 37 (1927).
Westinghouse
 Electric & Mfg. Co. v. Glencoe Cotton Mills, 106 S.C. 133, 138, 90 S.E. 526, 527 (1916), a breach
 of contract action, explicates a complaining partys duty to prove and minimize
 damages, and the limitation of damages when the party fails to mitigate:

 [I]t was
 competent for defendant to prove all defects that developed within 30 days from
 starting and all subsequent efforts to correct such defects, and the damages
 proximately resulting therefrom, after the lapse of a reasonable time for
 plaintiff to correct them, because after the rights and obligations of the
 parties became fixed under the contract by the development of the defects
 within the time therein specified, and report thereof to plaintiff as required
 by the contract, plaintiffs obligation was to correct the defects within a
 reasonable time; and, if it failed to do so, it became liable under the
 warranty for the damages that proximately resulted during such time as the
 circumstances justified a reasonable belief that the cause of the trouble might
 be discovered and corrected, of course, even during that time, it was defendants
 duty to reasonably exert itself to minimize the damages, and such as might have
 been averted by reasonable efforts are not proximate, and therefore not
 recoverable.

The
 doctrine of avoidable consequences is synonymous with mitigation of damages.  In Smalls v. Springs Industries, Inc., 300 S.C. 481, 484-485, 388 S.E.2d
 808, 810-811 (1990), the Supreme Court elucidated:

 The
 doctrine of avoidable consequences operates in wrongful discharge actions, as
 in others, to permit a wrongfully discharged employee to recover only damages
 for losses which, in the exercise of due diligence, he could not avoid. 
 Williston § 1359; 5 A. Corbin, Corbin on Contracts § 1095 (1964);
 Restatement § 455 comment d.  The employees so-called duty to mitigate his
 damages permits the employee to recover the amount of his losses caused by the
 employers breach reduced by the amount the employee obtains, or through
 reasonable diligence could have obtained, from other suitable employment.  Id.  A sizable body of law has developed defining the types of other employment an
 employee must accept under the circumstances in order to mitigate his damages.  
 See generally Annotation, Nature of Alternate Employment Which
 Employee Must Accept to Minimize Damages For Wrongful Discharge, 44 A.L.R.3d
 629 (1972).  Whether an employee has fully mitigated his damages is a question
 of fact.  Mixon v. Rossiter, 223 S.C. 47, 74 S.E.2d 46 (1953).

Accord, Chastain, 310 S.C. at 419-420, 426 S.E.2d at 835; Drawdy v. Town of Port Royal, 308 S.C. 462, 466, 419 S.E.2d 215, 217
 (1992); Hinton v. Designer Ensembles, Inc., 335 S.C. 305, 320, 516
 S.E.2d 665, 672, (Ct. App. 1999) overruled on other grounds by Hinton
 v. Designer Ensembles, Inc., 343 S.C. 236, 236, 540 S.E.2d 94, 94 (2000).
2.  Plaintiffs Burden to Prove
 Breach and Damages
When
 there is an action for the breach of a contract, a plaintiff must not only
 prove the contract and its breach, but damages caused by the breach.  Jackson v. Midlands Human Resources Ctr., 296 S.C. 526, 528, 374 S.E.2d 505,
 506 (Ct. App. 1988); Baughman v. Southern Ry. Co., 127 S.C. 493, 495,
 121 S.E. 356, 356 (1924).
Damages
 recoverable for breach of contract either must flow as a natural consequence of
 the breach or must have been reasonably within the parties contemplation at
 the time of the contract.  Manning v. City of Columbia, 297 S.C. 451,
 455, 377 S.E.2d 335, 337 (1989) (citing Kline Iron & Steel Co. v.
 Superior Trucking Co., 261 S.C. 542, 547, 201 S.E.2d 388, 390 (1973)); Holmes
 v. Nationwide Life Ins. Co., 273 S.C. 711, 715, 258 S.E.2d 924, 926 (1979); Hutson v. Continental Assur. Co., 269 S.C. 322, 332-333, 237 S.E.2d 375,
 379-380 (1977) overruled on other grounds by ONeal v. Bowles,
 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993); Fuller v. Easter Fire &
 Cas. Ins. Co., 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962); Smyth v.
 Fleischmann, 214 S.C. 263, 267, 52 S.E.2d 199, 201 (1949); National Tire
 & Rubber Co. v. Hoover, 128 S.C. 344, 347-348, 122 S.E. 858, 859 (1924); Hawkins v. Greenwood Dev. Corp., 328 S.C. 585, 595, 493 S.E.2d 875, 880
 (Ct. App. 1997).
When there is a
 breach, the amount of damages should put the non-breaching party in the
 position he would be in had the contract been performed.  Stiles v. American
 Gen. Life Ins. Co., 335 S.C. 222, 227, 516 S.E.2d 449, 451 (1999) (Toal,
 J., dissenting ) (This measure of damages allows an employee to receive the
 benefit of the bargain by placing the employee in as good a position as if the
 contract had been performed.) (citing Shivers v. John H. Harland Co., Inc.,
 310 S.C. 217, 221, 423 S.E.2d 105, 108 (1992)); Minter v. GOCT, Inc.,
 322 S.C. 525, 528, 473 S.E.2d 67, 70 (Ct. App. 1996).  The measure of damages
 for breach of contract is the loss actually suffered by the contractee as a
 result of the breach.  South Carolina Fin. Corp. v. West Side Fin. Co.,
 236 S.C. 109, 122, 113 S.E.2d 329, 335 (1960) (citing 15 Am. Jur., Damages,
 Section 43); Drews Co. v. Ledwith-Wolfe Assoc., 296 S.C. 207, 210, 371
 S.E.2d 532, 534 (1988); Minter, 322 S.C. at 528, 473 S.E.2d at 70.
Assuming
 that a proper evidentiary showing has been made by the plaintiff, ordinarily
 [t]he amount of damages is a question for the jury.  Perry v. Green,
 313 S.C. 250, 255, 437 S.E.2d 150, 153 (Ct. App. 1993) (citing Bonaparte v.
 Floyd, 291 S.C. 427, 438, 354 S.E.2d 40, 47 (Ct. App. 1987)); see also Charles v. Texas Co., 199 S.C. 156, 183, 18 S.E.2d 719, 725 (1942); Weeks
 v. Carolina Power and Light Co., 156 S.C. 158, 169, 153 S.E. 119, 123
 (1930); Gathers v. Harris Teeter Supermarket, Inc., 282 S.C. 220, 232,
 317 S.E.2d, 756 (Ct. App. 1984).
3.  Defendants Burden:  Mitigation
 Should be Possible and Reasonable
A defendant who
 claims a plaintiffs damages could have been mitigated has the burden of
 proving that mitigation is possible and reasonable.  Chastain v. Owens
 Carolina, Inc., 310 S.C. 417, 420, 426 S.E.2d 834, 835 (1993); Moore v.
 Moore, 360 S.C. 241, 262, 599 S.E.2d 467, 478 (Ct. App. 2004) (upholding
 the rule defendants have the burden of proving a plaintiffs damages could
 have been avoided, reduced, or minimized.); Genovese v. Bergeron, 327
 S.C. 567, 572, 490 S.E.2d 608, 611 (Ct. App. 1997) (Moreover, the party who
 claims damages should have been minimized has the burden of proving they could
 reasonably have been avoided or reduced.); Alala v. Peachtree Plantations,
 Inc., 292 S.C. 160, 167, 355 S.E.2d 286, 290 (Ct. App. 1987); Tri-Continental
 Leasing Corp. v. Stevens, Stevens & Thomas, P.A., 287 S.C. 338, 342,
 338 S.E.2d 343, 346 (Ct. App. 1985).
The defendants duty
 of proving mitigation is possible is made clear in Tri-Continental Leasing
 Corp.:

 In this
 case, Stevens [defendant] makes the naked assertion that Tri-Continental
 [plaintiff] could have mitigated its damages to a nominal amount by picking
 up the copier and repairing it, reselling it, or taking some other course of
 action to minimize damages.  Yet it adduced no proof to show any of these
 courses was feasible, what their cost would be to Tri-Continental, and whether
 they would, in fact, reduce the damages caused by Stevens breach.  Since
 Tri-Continental is engaged in commercial leasing as a financing device, does
 not deal in copying machines in its regular course of trade, has no offices in
 South Carolina, maintains no inventory of copying machines, has no facilities
 for repairing them, and was dealing with a seriously defective copier that had
 been depreciated in value by over two years of actual use, it seems unlikely it
 could have reduced it damages significantly by taking the actions Stevens
 suggests.  At the very least, there is no proof that a net reduction of damages
 would have resulted.

287 S.C. at 342-343, 338
 S.E.2d at 346-347.
The
 burden of proving lack of due diligence in minimizing damages is on [defendant].  Perry v. Green, 313 S.C. 250, 255, 437 S.E.2d 150, 153 (Ct. App. 1993) (citing Adams v. Orr, 260 S.C. 92, 97-98, 194 S.E.2d 232, 234 (1973)); Baty
 v. Stanley, 291 S.C. 546, 550, 354 S.E.2d 571, 573 (Ct. App. 1987) (The
 party claiming the injured party did not mitigate damages bears the burden of
 proving the injured party failed to mitigate.); Darby v. Waterboggan of
 Myrtle Beach, Inc., 288 S.C. 579, 586, 344 S.E.2d 153, 156 (Ct. App. 1986)
 (affirming the trial judges determination the issue of mitigation is not a
 jury issue absent proof by the defendant the damages were avoidable).
The
 reasonableness of a partys actions to mitigate damages is a question of fact
 which cannot be decided as a matter of law when conflicting evidence is
 presented.  Chastain, 310 S.C. at 420, 426 S.E.2d at 836; Hinton v.
 Designer Ensembles, Inc., 335 S.C. 305, 320, 516 S.E.2d 665, 672 (Ct. App.
 1999) overruled on other grounds by Hinton v. Designer Ensembles,
 Inc., 343 S.C. 236, 246, 540 S.E.2d 94, 99 (2000); Cisson Constr., Inc.
 v. Reynolds & Assocs., Inc., 311 S.C. 499, 503, 429 S.E.2d 847, 849 (Ct.
 App. 1993); McClary v. Massey Ferguson, Inc., 291 S.C. 506, 511, 354
 S.E.2d 405, 408 (Ct. App. 1987).
In Bannon
 v. Knauss, 282 S.C. 589, 594, 320 S.E.2d. 470, 473 (Ct. App. 1984), an
 action arising from a breach of contract to sell real property, the court
 articulated:

 The
 [plaintiffs] were under no duty to continue listing the property until they
 received an offer equal to [defendants]; their only duty was to take
 reasonable steps to avoid those damages which were avoidable once the contract
 was breached.  Hunter v. Southern Railroad Co., 90 S.C. 507, 73 S.E.
 1017 (1912); Rosenberg v. Stone, 160 Va. 381, 168 S.E. 436
 (1933).  The evidence provided no basis for the court to hold, as a matter of
 law, that the [plaintiffs] unreasonably failed to mitigate damages.  That
 question was properly submitted to the jury.

Concomitantly, a
 judge may not lower a jurys award to compensate defendant for plaintiffs lack
 of vigor to mitigate, as illustrated in McClary:

 Since
 McClary was seeking damages of $130,000, it is inferable that the jury
 considered mitigation and declined to award the $17,000 sought for losses
 occurring after 1984.  The losses McClary suffered in 1984 were incurred in
 hiring workers to harvest crops he had obligated himself to harvest in 1983. 
 Massey Ferguson again argues, and the judge apparently agreed, that McClary
 should have mitigated these losses by repairing the combine.  As we have
 already observed, whether McClary was under a duty to spend $4,000 to have the
 machine repaired was properly a question for the jury.  We hold, therefore, the
 trial judge erred in reducing the damages awarded by the jury.

291 S.C. at 511, 354 S.E.2d
 at 408.
4.     Employment Contracts
An employment
 contract may be either for a stated term or at will.  Young v. McKelvey,
 286 S.C. 119, 123, 333 S.E.2d 566, 568 (1985).  The measure of damages when an
 employee is wrongfully discharged under a contract for a definite term
 generally is the wages for the unexpired portion of the term.  Stiles v.
 American Gen. Life Ins. Co., 335 S.C. 222, 225, 516 S.E.2d 449, 450 (1999); Shivers v. John H. Harland Co., Inc., 310 S.C. 217, 220, 423 S.E.2d 105,
 107 (1992).
The
 doctrine of avoidable consequences operates in a wrongful discharge action to
 permit a wrongfully discharged employee to recover only damages for losses
 which, in the exercise of due diligence, he could not avoid.  Smalls v.
 Springs Industries, Inc., 300 S.C. 481, 484-485, 388 S.E.2d 808, 810-811
 (1990) (Littlejohn, A.J., dissenting) (An employee seeking damages for breach
 of an employment contract has a duty to mitigate those damages.) (citing Small
 v. Springs Industries, Inc., 292 S.C. 481, 486, 357 S.E.2d 452, 455
 (1987)).
Baril
 v. Aiken Regional Medical Centers,
 352 S.C. 271, 285, 573 S.E.2d 830, 838 (Ct. App. 2002), an action for breach of
 an employment contract, has striking similarity to the case at bar.  In
 examining the appropriateness of summary judgment in Baril, this Court
 explained:

 A party
 injured by the acts of another is required to do those things a person of
 ordinary prudence would do under the circumstances, but the law does not
 require him to exert himself unreasonably or incur substantial expense to avoid
 damages.  McClary v. Massey Ferguson, Inc., 291 S.C. 506, 354 S.E.2d 405
 (Ct. App. 1987).  Whether the party acted reasonably to mitigate damages is
 ordinarily a question for the jury.  Id.
 Baril
 did not seek other employment throughout this litigation.  However, she
 attempted to justify her behavior.  First, she testified she did not want to
 reveal to potential employers that she had been fired.  Second, she testified
 that there were no other hospitals with emergency rooms in or near Aiken, where
 she resided.  Thus, she would have been forced to either commute or relocate in
 order to perform similar work.  Baril did not want to relocate because she had
 a home and family in Aiken, where she taught college classes on a full-time
 basis.  Baril speculated that a lengthy commute would interfere with her
 teaching career.
 Considering
 the evidence in the light most favorable to Baril, reasonable minds could
 disagree over whether she made reasonable efforts to mitigate her damages.  The
 trial court should have allowed this question to be resolved by a jury.

5.  Application of Doctrine of
 Avoidable Consequences
In the case at bar,
 Hughes and the County entered into an employment contract for a definite term
 of three (3) years.  The Contract included an annual salary of fifty thousand
 dollars ($50,000), health benefits, and retirement benefits.  Hughes started working
 and was terminated approximately a year later, with almost two years remaining
 on the Contract.
Hughes brought a
 breach of contract action and sought damages.  The County raised the doctrine
 of avoidable consequences, averring Hughes was under a duty to make all reasonable
 efforts to minimize her alleged damages.  Moreover, the County asserted Hughes
 was not entitled to damages which could have been avoided by reasonable care
 and diligence.  The trial court granted summary judgment in favor of the
 County, holding there were no factual issues left in dispute with regards to
 Hughess failure to mitigate damages based on submitted documents, affidavits,
 and Hughess deposition.
The
 doctrine of avoidable consequences imposes a duty on Hughes to act as a
 reasonable, prudent person to mitigate her damages, but she is not required to
 exert herself unreasonably or incur substantial costs.  In addition, it
 requires the County to present evidence showing the damages were reasonably avoidable. 
 Hughes attempts to justify her inaction with her deposition testimony by
 stating she did not seek employment other than the inquiry at Booksmith in
 Seneca because:  [it was] appallingly difficult to go anywhere, to the grocery
 store, to church, to my hairdressers, anywhere, out to dinner with my husband,
 to do anything, because of everything that has happened over the past several
 years.
In
 totality, the actions and conduct of Hughes to mitigate her damages must be
 examined in the light of what an ordinary, reasonable and prudent person would
 do under similar circumstances.  Indubitably, the evidentiary record mandates
 that the issue of mitigation of damages in this case is a question which should
 have been submitted to the jury.  
A priori, an issue
 exists as to the identification of damages, i.e., accrued, prospective, and
 present.  This case involves a contract for a specified term.  Two (2) years
 existed or remained in the contract term after the date of Hughess
 termination.  Hughes asserts that a potpourri of damages should be presented to
 the jury inclusive of:  (1) accrued damages, (2) prospective damages, and (3)
 present damages.  Importantly, the summary judgment was heard on July 31, 2006,
 and the evidence relied upon by the circuit court in concluding Hughes had not
 done enough to mitigate her damages was developed in February 2006.  At that
 time, Hughes had an additional nine (9) months left in the employment term,
 within which she could have made additional efforts at seeking employment.
CONCLUSION
We
 rule there are genuine issues of material fact as to whether Hughes acted
 reasonably in mitigating her damages.  The trial court erred in granting the
 Countys motion for summary judgment.  We hold the evidentiary record prohibits
 the grant of summary judgment based upon the doctrine of mitigation of damages
 and/or the doctrine of avoidable consequences.  
Accordingly,
 the trial courts decision is
REVERSED.
ANDERSON and THOMAS, JJ.,
 and CURETON, A.J., concur.

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.